# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SALADWORKS, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10327 (LSS)<br><br>Ref. Nos. 14, 59 |

### ORDER (I) APPROVING STALKING HORSE PROCEDURES AND BIDDING PROCEDURES IN CONNECTION WITH A TRANSACTION BY PUBLIC AUCTION; (II) SCHEDULING A HEARING TO CONSIDER THE TRANSACTION; (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (IV) APPROVING CONTRACT PROCEDURES

Upon the *Motion of the Debtor and Debtor-In-Possession for Entry of an Order (I) Approving Stalking Horse Procedures and Bidding Procedures in Connection with a Transaction by Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof and (IV) Approving Contract Procedures* (the "Motion");[2] and the Court having reviewed the Motion and the First Day Declaration and having heard the statements of counsel and evidence adduced with respect to the Motion at a hearing before the Court to consider the relief requested therein with respect to a Procedures Order (the "Hearing"); and it appearing that notice of the Motion provided is appropriate and sufficient under the circumstances and that no other and further notice need by given; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation and good and sufficient cause appearing therefor:

---

[1] The last four digits of the Debtor's tax identification number are (7282). The Debtor's corporate office and the mailing address is 161 Washington Street, Suite 300, Conshohocken, PA 19428.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

{1045.001-W0034521.2}

IT IS HEREBY FURTHER FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over this matter and over the property of the Debtor and its estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b). Venue in this judicial district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and rule-based predicates for the relief sought in the Motion are Bankruptcy Code sections 105, 363, 365, 503 and 507 and Federal Rules 2002, 6003, 6004, 6006, 9008 and 9014, and Local Rule 6004-1.

C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is requires except as set forth herein with respect to the hearing of the court to consider, among other things, a Transaction (the "Sale Hearing"). A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The Debtor has articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the Transaction process, including, without limitation (i) approving the Stalking Horse Procedures set forth herein and the Bidding Procedures attached herein as **Annex 1** in connection with a transaction by public auction; (ii) scheduling the Sale Hearing; (iii) approving the form and manner of the Sale Notice attached hereto as **Annex 2**; (iv) approving the Contract Procedures and (v) the Cure Notice attached hereto as **Annex 3**.

E.      The Stalking Horse Procedures, the Bidding Procedures and the Contracts Procedures (collectively, the "Procedures") are reasonably designed to maximize the value to be obtained from a sale of the Assets.

F. The form and scope of the Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Transaction, the Sale Hearing, the Bidding Procedures and the Auction and no other further notice is required.

G. The Contract Procedures and the Assignment Notice are appropriate and reasonably calculated to provide all Non-Debtor Counterparties with proper notice of the potential assumption, assignment or rejection of their Contract and any Cure Costs relating thereto and no further notice is required.

H. The entry of this Order is in the best interests of the Debtor, its estate, creditors and other parties in interest; and it is therefor

ORDERED, ADJUDGED AND DECREED THAT:

1. The relief requested in the Motion is GRANTED.

2. The Stalking Horse Procedures, Bidding Procedures and Contracts Procedures are approved in all respects.

3. All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion, reflected in this Order or by stipulation or withdrawal filed with the Court, are overruled.

4. Pursuant to the Stalking Horse Procedures, parties who are interested in serving as the Debtor's Stalking Horse Purchaser must deliver to the Debtor an executed Confidentiality Agreement and a written offer (the "Stalking Horse Bid") within forty (43) days of the Petition Date (the "Stalking Horse Bid Deadline"). The Stalking Horse Bid must meet each of the following conditions:

(a) Is made by a person or entity that demonstrates evidence of fully committed and firm financing for each component of debt or equity in support of such Stalking Horse Bid and other ability to consummate the proposed transaction, in each case acceptable to the Debtor in its sole and

absolute discretion, after consultation with the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case (the "Committee");

(b) Provides written evidence that the Stalking Horse Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its Stalking Horse Bid and the execution of a Transaction Agreement, or a representation that no such authorization or approval is required;

(c) Provides that the purchase price will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtor;

(d) Provides by wire transfer or immediately available funds to the Debtor or an appropriate escrow agent before the Stalking Horse Bid Deadline of an earnest money deposit equal to (X) 10% of the dollar amount of the purchase price of such Stalking Horse Bid; or (Y) 10% of the value of such Stalking Horse Bid (the "Deposit");

(e) Provides evidence satisfactory to the Debtor that the Stalking Horse Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Assets;

(f) Is submitted in writing in the form of a Transaction Agreement and signed by the Stalking Horse Bidder, that:

(1) Identifies the Stalking Horse Bidder;

(2) Is not subject to conditions, representations or terms that the Debtor determines to be unacceptable;

(3) Does not contain any financing contingencies to closing of the proposed Transaction;

(4) Does not contain any condition to closing of the Transaction relating to the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval);

(5) Expressly acknowledges and represents that the Stalking Horse Bidder: (A) has had an opportunity to conduct due diligence regarding the proposed Transaction prior to making its Stalking Horse Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Stalking Horse Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or

otherwise, regarding the business of the Debtor or the Assets or the proposed Transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Transaction Agreement ultimately accepted and executed by the Debtor; and

(g) Acknowledges that the Stalking Horse Bidder consents to the jurisdiction of this Bankruptcy Court to determine matters concerning the sale, their Stalking Horse Bid and otherwise with respect to the process and waive any right to any other venue.

(h) Provides that the Stalking Horse Bidder will adhere to the Debtor's prepetition privacy policies regarding personally identifiable information.

(i) Contains other information reasonably requested by the Debtor.

5. In the event the Debtor selects a Stalking Horse Purchaser, the Debtor shall cooperate with any investigation by the Committee into the selection of the Stalking Horse Purchaser and the Stalking Horse Bid [*and notify counsel to UH of the selection of the Stalking Horse Purchaser.*]

6. In the event the Debtor selects a Stalking Horse Purchaser, the Debtor may, in consultation with its professionals and in its sole and absolute discretion, after consultation with the Committee, seek authority to offer to the Stalking Horse Purchaser, as an actual and necessary cost and expense of preserving the value of the Debtor's estate, a break-up fee in an amount not to exceed 3% of the total guaranteed cash price contained in its Stalking Horse Bid (the "Break-Up Fee") to a Stalking Horse Bidder who agrees to provide a Stalking Horse Bid for a Transaction that will serve as a "stalking horse" Bid at the Auction. Any agreement to provide a Break-Up Fee shall be (a) approved by the Court by separate order entered on or after the Stalking Horse Hearing with such hearing to be held on no less than three (3) days' notice to: (i) counsel to the Committee, (ii) the U.S. Trustee, [*(iii) counsel to UH*] and (iii→iv) any party requesting notice pursuant to Bankruptcy Rule 2002 and (b) expressly conditioned on the consummation of a Transaction to a

Prevailing Bidder. The Break-Up Fee, if any is approved, shall be an administrative expense claim against the Debtor's estate pursuant to Bankruptcy Code section 503(b).

7. The Bidding Procedures attached hereto as **Annex 1** are hereby approved and fully incorporated into this Order, and shall apply with respect to the Auction and any Transaction resulting therefrom.

8. Pursuant to the Bidding Procedures, any Potential Bidder interested in pursuing a Transaction must submit a Bid prior to **5:00 p.m. (prevailing Eastern time) on May 15, 2015** (the "Bid Deadline") and shall comply with the requirements set forth in the Bidding Procedures in making such bid.

9. All Stalking Horse Bidders and Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters between and among any such party and the Debtor related to the Auction and the Transaction.

10. If the Debtor receives more than one Qualified Bid for a Transaction in accordance with the Bidding Procedures, the Debtor will conduct the Auction on or about **May 18, 2015, at 10:00 a.m. (prevailing Eastern time)** at the offices of the Debtor's counsel, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 or such other location as may be announced prior to the Auction to all Qualified Bidders, the U.S. Trustee and the Committee.

11. If only the Stalking Horse Purchaser's Transaction Agreement is received by the Bid Deadline, the Auction will be deemed cancelled and the Stalking Horse Purchaser's Transaction Agreement will be deemed the Prevailing Bid, and the Debtor will seek authority to consummate the Transaction as contemplated therein. No later than 5:00 p.m. the day prior to the Auction, the Debtor shall notify all Qualified Bidders, including any Stalking Horse

Purchaser, who submitted Qualified Bids and counsel to the Committee whether the Auction will occur. The Debtor shall also notify parties in interest whether the Auction will occur by filing a notice on the docket no later than 5:00 p.m. the day prior to the Auction.

12. At the conclusion of the Auction the Debtor shall: (i) in its sole and absolute discretion, after consultation with counsel to the Committee, select (X) the Prevailing Bid and (Y) the second highest or best offer for the Assets (the "Back-Up Bid"); (ii) notify the Prevailing Bidder that such person's offer has been determined by the Debtor to be the Prevailing Bid and will be contingent only on Court approval, and shall notify the person that made the Back-Up Bid (the "Back-Up Bidder") that such person's offer has been determined by the Debtor to be a Back-Up Bid and will be contingent only on the failure of the Prevailing Bid to close as set forth below and Bankruptcy Court approval; and (iii) file a notice with the Court announcing the Prevailing Bidder.

13. The Sale Notice attached hereto as **Annex 2** is approved in all respects. The Sale Notice shall include a provision notifying all parties in interest that the Debtor, subject to the terms of the Prevailing Bidder's Transaction Agreement, may seek entry of an order which provides, except with respect to any assumed liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding liens, claims, encumbrances or interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinated), arising under or out of, in connection with, or in any way related to the Debtor, the Assets or the operation of the Debtor's business prior to the closing date of the sale, are forever barred, estopped and permanently

enjoined from asserting, against the Prevailing Bidder(s), their property or the applicable Assets, such person's or entities liens, claims, encumbrances or interests in and to the applicable Assets.

14. The Debtor shall within five (5) business days after entry of the Order approving the Stalking Horse Purchaser or after the filing of a motion to approve a Transaction, whichever is later, (the "Mailing Deadline"), serve the Sale Notice by first-class mail, postage prepaid upon: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) all taxing authorities having jurisdiction over any of the Assets or equity, including the Internal Revenue Service; (iv) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date hereof; (v) all persons or entities known to the Debtor that have or have asserted a lien on, or security interest in, all or any portion of the Assets or equity; (vi) counsel to vit and (vii) any potential bidders previously identified or otherwise known to the Debtor (collectively, the "Notice Parties"). The Debtor will also publish the Sale Notice in the national edition of either the *Wall Street Journal* or *USA Today* once within three (3) business days after the Mailing Deadline. The Sale Notice provides all parties in interest good and sufficient notice of the relief sought in the Procedures Motion, including, but not limited to, the Auction, the Bid Deadline, the Bidding Procedures, the Sale Hearing, the Transaction and the assumption and assignment of Potential Designated Contracts.

15. The Sale Hearing shall be conducted on May 19, 2015 at 10:00 a.m., prevailing Eastern Time.

16. Objections to the approval of Prevailing Bidder's Transaction Agreement – other than an objection to the proposed assumption and assignment of Potential Designated Contracts or to any proposed Cure Costs including, but not limited to, the sale of the Assets and/or equity free and clear of Claims pursuant to Bankruptcy Code section 363(f) for all parties in interest must: (a) be in writing; (b) clearly specify the grounds for the objection; (c) conform to the

Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties (collectively, the "Objection Notice Parties") by no later than **4:00 p.m. (ET) on May 12, 2015 at 4:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline"): (i) counsel to the Debtor, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Adam G. Landis, Esq. and Kerri K. Mumford, Esq.); (ii) counsel to the Committee, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801 (Attn: Richard M. Beck, Esq.); and (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.).

17. Pursuant to the Contract Procedures set forth in the Motion, objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of a Potential Designated Contracts, excluding, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Prevailing Bidder for purposes of Bankruptcy Code section 365(c)(1), must be in writing and filed with this Court and served on the Objection Notice Parties so as to be received no later than seven (7) days prior to the Sale Hearing (the "Cure Objection Deadline"). The Non-Debtor Counterparties shall have until the Sale Hearing to submit an objection to the Debtor's ability to assign the Potential Designated Contract to the Prevailing Bidder without the Non-Debtor Counterparty's consent or to the adequate assurance of future performance to be provided (the "Adequate Assurance Objection Deadline," and together with the Cure Objection Deadline, the "Contract Objection Deadlines").

18. Any Non-Debtor Counterparty to a Potential Designated Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment

of a Potential Designated Contract by the Contract Objection Deadlines, as applicable, is deemed to have consented to such Cure Costs and the assumption and assignment of such Potential Designated Contract by the Debtor and to the Prevailing Bidder, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate or the Prevailing Bidder.

19. Further, if the Non-Debtor Counterparty to a Potential Designated Contract fails to timely object to the assumption and assignment of a Potential Designated Contract or the proposed Cure Cost relating thereto by the Contract Objection Deadlines, as applicable, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Potential Designated Contract shall be deemed to be assumed by the Debtor and assigned to the Prevailing Bidder and the proposed Cure Costs related to such Potential Designated Contract shall be established and approved in all respects, subject to the conditions set forth in the Contract Procedures.

20. The Assignment Notice attached hereto as **Annex 3** is hereby authorized and approved.

21. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Order shall be effective immediately upon its entry.

22. The Debtor is authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary or appropriate to implement the relief granted herein.

23. The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this Order.

Date: March 11, 2015
Wilmington, Delaware

*[signature]*
The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge