IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SALADWORKS, LLC,[1] | Case No. 15-10327 (LSS) |
| Debtor. | Hearing Date: April 21, 2015 at 2:00 p.m. (ET)<br>Obj. Deadline: April 14 2015 at 4:00 p.m. (ET) |

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE INCENTIVE PLAN

The above-captioned debtor and debtor-in-possession (the "Debtor") by and through its proposed undersigned counsel, hereby submits this *Motion of the Debtor for Entry of an Order Authorizing Implementation of Key Employee Incentive Plan* (the "Motion"). In support of the Motion, the Debtor relies on the *Declaration of J. Scott Victor in Support of the Motion of the Debtor for Entry of an Order Authorizing Implementation of Key Employee Incentive Plan* (the "Victor Declaration") attached hereto as **Exhibit A**, and respectfully states as follows:

### JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2] Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's tax identification number are (7282). The Debtor's corporate office and the mailing address is 161 Washington Street, Suite 300, Conshohocken, PA 19428.

[2] Pursuant to Local Rule 9013-1(f), the Debtor hereby confirms its consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

{1045.002-W0035496.}

2.  The statutory predicates for the relief requested herein are sections 105(a), 363 and 503(c)(3) of chapter 11 of the United States Code (as amended or modified, the "Bankruptcy Code").

## BACKGROUND

*The Bankruptcy Case*

3.  On February 17, 2015 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.

4.  The Debtor continues to operate its business and manage its properties as a debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date of this Motion, no trustee or examiner has been appointed in this Chapter 11 Case.

5.  On February 26, 2015, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Case (the "Committee").

6.  A detailed description of the Debtor and its business, and the facts and circumstances surrounding the Chapter 11 Case, are set forth in greater detail in the *Declaration of Paul Steck in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration")[3] filed on the Petition Date and incorporated herein by reference.

*The Pursuit of a Transaction*

7.  On the Petition Date, among other things, the Debtor filed the *Motion of the Debtor and Debtor-In-Possession for Entry of an Order (I) Approving Stalking Horse Procedures and Bidding Procedures in Connection with a Transaction by Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of*

---

[3] Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

*Notice Thereof and (IV) Approving Contract Procedures* (the "Procedures Motion"). Through the Procedures Motion, the Debtor seeks entry of an order approving, among other things, stalking horse and bidding procedures in connection with a transaction by public auction.

8. As explained in the First Day Declaration and the Procedures Motion, the Debtor filed this Chapter 11 Case so that it can engage in an open and transparent process wherein the Debtor will either recapitalize itself or sell substantially all of its assets (the "Transaction") in order to satisfy its valid obligations.

9. Since the Petition Date, the Debtor has worked diligently in pursuit of a Transaction, with the assistance of its investment banker, SSG Advisors, LLC ("SSG"). SSG has worked closely with the Debtor's management team to analyze its current financial position and business operations and to prepare diligence materials and populated a digital data room for prospective purchasers interested in pursuing a Transaction with the Debtor. The Debtor has received approximately sixty-three (63) nondisclosure agreements and has conducted several management presentations. The Debtor has also received a number of expressions of interest and is working to identify a Stalking Horse Purchaser.

10. Pending the completion of a Transaction, and in order to maximize the value thereof, it is crucial that the Debtor continue to maximize value of its going concern business and that its management team is incentivized to perform optimally in order to achieve this goal. In that regard, the Debtor has identified certain employees who, based on their experience, institutional knowledge, expertise, and vendor, franchisee and customer relations, are critical to ensuring that the going concern value of the Debtor's business is maximized for the benefit of all stakeholders.

*The Key Employee Incentive Plan*

11.  KEIP Participants. The Debtor seeks authorization to implement a key employee incentive plan (the "KEIP") for five (5) of its key employees (the "Key Employees"), whose institutional knowledge and skill are essential to maximizing the value of the Debtor's estate during the course of the Chapter 11 Case. A list of the Key Employees and their positions with the Debtor is attached hereto as **Exhibit B**.

12.  The KEIP Incentive. The KEIP is purely an incentive, and not retention, based compensation plan that rewards these Key Employees only if the Debtor achieves certain benchmarks that are directly related to either a sale or recapitalization of the Debtor's business and a definitive plan to return proceeds therefrom to pay creditors and stakeholders. The amount of the bonuses for which each of the Key Employees is eligible is tied directly to the achievement of these benchmarks. The maximum amount each Key Employee may receive under the KEIP is the equivalent of five (5) months' salary of such Key Employee (the "Incentive"). Assuming all benchmarks are achieved and each of the Key Employees meet the obligations discussed herein, the aggregate maximum Incentive that can be awarded under the KEIP is $296,000.[4]

13.  KEIP Benchmarks and Percentage of Incentive. The benchmarks and percentage of Incentive Earned are set forth in the charts below and depend on whether the Transaction results in a sale of the Debtor's assets or a recapitalization of the Debtor.

---

[4] Disclosure of the Key Employees' salary and the maximum Incentive per Key Employee is included on the chart attached hereto as **Exhibit B**.

| BENCHMARKS IF TRANSACTION IS A SALE | |
|---|---|
| **Sale Milestones** | **Percentage of Incentive Earned** |
| An agreement is executed with a stalking horse bidder. | 25% |
| The closing of a sale transaction. | 25% |
| The Debtor files a plan. | 25% |
| The plan goes effective. | 25% |

| BENCHMARKS IF TRANSACTION IS A RECAPITALIZATION | |
|---|---|
| **Recapitalization Milestones** | **Percentage of Incentive Earned** |
| The plan proponent signs a binding letter of intent. | 25% |
| The Debtor files a plan. | 25% |
| The plan goes effective. | 50% |

14. <u>Limitations on the KEIP</u>.  If the Key Employee accepts a position with either the successful bidder or the reorganized company, as applicable, then the Incentive such Key Employee would otherwise be entitled to receive will be reduced by fifty percent (50%). Additionally, if a Key Employee resigns or is terminated for Cause[5] prior to the effective date of a plan, such employee will forfeit the entire Incentive.  Participation in the KEIP also requires the Key Employees to release the Debtor from any claims they may have against the Debtors, except with respect to claims for deferred compensation, salary, expense reimbursements and any other employee compensation or benefit related claims.  To the extent the applicable benchmarks are achieved and after factoring in these conditions, the Incentive will be paid to the Key Employee within five (5) business days of the effective date of a plan.

---

[5] For purposes of the KEIP, "Cause" means each of the following as determined in the discretion of the Debtor's Board of Directors (excluding the Key Employee who is the subject of the termination) in the exercise of its good faith and reasonable judgment: (i) a material and willful breach of the Key Employee's fiduciary duties to the Debtor; (ii) in connection with the discharge of the Key Employee's duties with the Debtor, one or more material acts of fraud or dishonesty or gross abuse of authority; (iii) the Key Employee's willful commission of conduct which would constitute grounds for termination for violation of a material policy of the Debtor as in affect at the time; (iv) the Key Employee's breach of any material provision of nondisclosure, noncompetition or other similar agreement; or (v) the Key Employee's habitual and intemperate use of alcohol or drugs to the extent that the same materially interferes with the Key Employee's ability to competently, diligently and substantially perform the duties of his or her employment.

15. The Key Employees were selected because of their unique operational and historical knowledge of the business which makes them essential to operating the Debtor's business and obtaining the highest possible value in a Transaction. Among them, the Key Employees have approximately thirty-seven (37) years of experience in managing the Debtor's business. The Key Employees do not include the Debtor's founder and CEO, John M. Scardapane.

16. The Key Employees also were selected to participate in the KEIP because, both prior to and after the Petition Date, they assumed significant additional responsibilities and time commitments above and beyond their normal duties in order to assist the Debtor, for which they will not otherwise be compensated. Specifically, the Key Employees assumed the following additional responsibilities: (a) assisting the Debtor's professional advisors in understanding the Debtor's business; (b) interacting with the creditors, franchisees and potential purchasers, including responding to extensive requests and attending in-person and telephonic meetings; (c) assisting with the general preparation of the Chapter 11 Case, such as by addressing factual inquiries from all of these constituents; (d) assisting with the preparation of the Debtor's schedules and statements and (e) assisting in the satisfaction of multiple other reporting requirements of the Office of the United States Trustee. Since the filing of the Chapter 11 Case, the Debtor's Training Manager, whose duties included training franchisees, providing business coaching services and generally assisting the Debtor and its franchisees in maximizing their operations resigned, further increasing the workloads of certain of the Key Employees.

17. Of course, the Key Employees are expected to continue to perform their daily tasks unrelated to the bankruptcy proceeding – namely, maintaining the daily operations and finances of the Debtor. The Key Employees are also critical to maintaining good relationships

with existing vendors, franchisees, landlords and other parties so that the Debtor can realize and preserve the highest possible value of its business.

18. The Debtor and its professionals conducted significant due diligence in identifying the needs for and designing the KEIP. As explained in the Victor Declaration, the Debtor requested J. Scott Victor of SSG Advisors, LLC and Edward Phillips of EisnerAmper LLP, the Debtor's investment banker and financial advisor respectively, to develop a KEIP. Messrs. Victor and Phillips used their extensive experience and analysis of several recently approved key employee incentive plans to determine the metrics for the KEIP and after discussions with the Debtor's sole disinterested board member, the KEIP was presented to the Board for review and, ultimately approved by the CEO (as the disinterested board member), consistent with the Debtor's Operating Agreement.

19. The Debtor believes that the KEIP is appropriately designed to incentivize the Key Employees to continue their substantial efforts in operating the Debtor's businesses, assisting with this Chapter 11 Case, maximizing the value of a Transaction and ensuring that creditors and stakeholders all promptly are paid. Moreover, the KEIP also appropriately compensates the Key Employees for the additional (and time consuming) responsibilities that they will have to continue to perform to reach the Incentive benchmarks.

## RELIEF REQUESTED

20. By this Motion, the Debtor seeks entry of an order, substantially in the form of the proposed order attached hereto, authorizing the implementation of the KEIP.

## BASIS FOR RELIEF

21. The Debtor seeks authority to implement the KEIP under Bankruptcy Code section 503(c)(3) as a valid exercise of its business judgment. The KEIP is (a) closely related to

the Debtor's goal, (b) reasonable in cost in light of the Debtor's assets, liabilities, and projected earnings, (c) fair, nondiscriminatory and customary in the chapter 11 context, and (d) fully vetted and was done so internally and externally by the CEO with assistance from the Debtor's professionals, including the developers thereof, Messrs. Victor and Phillips.

22. Historically, compensation plans were analyzed and approved under Bankruptcy Code section 363, which authorizes the debtor to use, sell or lease property of the estate. See, e.g., In re Global Home Prods., LLC, 369 B.R. 778, 784 (Bankr. D. Del. 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); In re Nobex Corp., 2006 Bankr. LEXIS 417, at *7 (Bankr. D. Del. Jan. 19, 2006) (approving incentive pay outside of the ordinary course where it was "an appropriate exercise of the Debtor's business judgment."). If such use, sale or lease is conducted outside the ordinary course of business, the debtor's transaction must satisfy the business judgment rule. See In re Del. & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991) (explaining that the Third Circuit has adopted the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

23. In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (the "BAPCPA"), which inserted section 503(c) into the Bankruptcy Code and restricted retention-based payments to corporate insiders. See S. 256, 109th Cong. (2005); H.R. 685, 109th Cong. (2005); see also In re Global Home Prods., LLC, 369 B.R. at 784 (recounting purpose of BAPCPA). Thus, if a proposed compensation plan is purely motivated by retaining a corporate insider, it will have to comply with the rigid requirements of section 503(c)(1). See In re Nellson Nutraceutical, Inc., 369 B.R. 787, 802 (Bankr. D. Del. 2007) (finding that section 503(c)(1) applies only to retention programs with "the primary purpose of inducing [an

employee] to remain with the debtor's business."). On the other hand, incentive-based compensation plans made to such insiders (or other payments made to non-insiders), outside the ordinary course, are approved under section 503(c)(3) if they satisfy the business judgment rule. See id. at 803-804; see also In re Dana Corp., 358 B.R. 567, 574 (Bankr. S.D.N.Y. 2006).

24. In assessing whether a proposed compensation plan satisfies Bankruptcy Code section 503(c)(3) and the business judgment rule, courts consider the following factors:

- Is there a reasonable relationship between the plan proposed and the results to be obtained?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable, such that it does not discriminate unfairly?

- Is the KEIP consistent with industry standards and practices?

- What due diligence did the debtor conduct in determining that there is a need for a KEIP and in selecting the employees eligible under the proposed KEIP, in light of what is available and applicable in the industry?

- Did the debtor receive independent counsel in performing this due diligence, and in crafting and authorizing the KEIP?

In re Dana Corp., 358 B.R. at 574. See also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is legitimate business justification).

25. Here, in light of the foregoing, the Court should approve the proposed KEIP because it is purely an incentive-based compensation plan, and its implementation falls squarely within the Debtor's sound business judgment and satisfies Bankruptcy Code section 503(c)(3).

26. Indeed, the KEIP meets all of the above-listed criteria of the business judgment rule as applied under a section 503(c)(3) analysis. First, the KEIP is directly related to the Debtor's goal of effectuating a Transaction during this Chapter 11 Case and utilizing the

proceeds thereof to pay its valid outstanding obligations because it incentivizes the Key Employees to maximize going concern value, identify and execute an agreement with a Transaction proponent, obtain confirmation of a plan, have the confirmed plan go effective and make payments to creditors and other stakeholders. The Key Employees' interest in receiving compensation is directly aligned with the interest of getting a Transaction closed, a plan confirmed, and parties in interest paid. Indeed, the primary component of the KEIP Incentive depends on the confirmation of a plan and such plan going effective – without which there can be no distributions to creditors. These Key Employees will have to work diligently to earn the KEIP Incentive and will forfeit any payouts if they voluntarily terminate their employment with the Debtor before all of the targeted benchmarks have been met. Moreover, while the Key Employees have rendered faithful service in the past, the Debtor believes that additional incentive is necessary pending the effective date of a confirmed plan because the Key Employees have taken on a number of additional responsibilities and time commitments in connection with the Chapter 11 Case for which they would not otherwise be compensated.

27. Second, the cost of the KEIP is reasonable and can be properly supported by the Debtor in light of its assets, liabilities and earning potential. The KEIP will only cost a small fraction of the anticipated value of a Transaction.

28. Third, the KEIP is fair and reasonable because it does not discriminate at all, let alone unfairly. The KEIP applies substantially equally to its five (5) participants and does not discriminate against other similarly situated employees.

29. Fourth, the KEIP also is consistent with the standards and practices in the industry in general, and chapter 11 debtors in particular. As explained in greater detail in the Victor Declaration, Messrs. Victor and Phillips developed the KEIP with the Debtor taking into

consideration recently approved key employee incentive plans from similar cases in this district and the Debtor's Chapter 11 goals.

30. Fifth, the Debtor conducted thorough due diligence with respect to the KEIP by: (i) tasking Messrs. Victor and Phillips with developing the KEIP, (ii) negotiating the KEIP at arms' length with the Debtor's founder and CEO, a non-participant, (iii) reviewing materials with respect to recently approved key employee incentive plans in this district, and (iv) holding a meeting of the Board to discuss any questions with respect to the KEIP and to approve the form thereof with KEIP participants recused and abstaining from voting.

31. Additionally, the KEIP is not a retention-based compensation plan and is thus not subject to the restrictions of Bankruptcy Code section 503(c)(1). The KEIP is an incentive-based plan that rewards its beneficiaries for achieving operational and financial results that will preserve and maximize the value of the Debtor's business for the benefit of all the stakeholders. The KEIP does not compensate the Key Employees simply to remain in the Debtor's employ through this Chapter 11 Case. Accordingly, section 503(c)(1) does not apply.

32. Significantly, targeted incentive programs such as the KEIP have been recognized and approved in this District. See, e.g., Furniture Brands Int'l, Inc., Case No. 13-12329 (CSS) (Oct. 11, 2013); In re THQ, Inc., Case No. 12-13398 (MFW) (Bankr. D. Del. May 29, 2013); In re Solyndra LLC, Case No. 11-12799 (MFW) (Bankr. D. Del. Feb. 22, 2012); In re Real Mex Rests., Inc., Case No. 11-13122 (BLS) (Bankr. D. Del. Dec. 19, 2011); In re Eddie Bauer, Inc., Case No. 09-12099 (MFW) (Bankr. D. Del. July 22, 2009); In re Anchor Blue Retail Gr., Inc., Case No. 09-11770 (PJW) (Bankr. D. Del. June 30, 2009); In re Drug Fair Group, Inc., Case No. 09-10897 (BLS) (Bankr. D. Del. May 4, 2009).

33. Therefore, for all the foregoing reasons, the Debtor believes that the KEIP satisfies the business judgment rule and should be approved under Bankruptcy Code section 503(c)(3).

## NOTICE

34. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Committee, and (c) all parties that have filed a request for notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

35. No prior motion for the relief requested herein has been filed in this or any other court.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, for the reasons set forth herein and in the Victor Declaration, the Debtor respectfully requests that this Court enter an order, substantially in the form of the proposed order attached hereto, (a) authorizing the Debtor to (i) implement the KEIP, and (ii) make payments related to the KEIP, and (b) granting such other and further relief as is just and proper.

Dated: March 31, 2015
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mumford@lrclaw.com
       brown@lrclaw.com

*Counsel to the Debtor and Debtor-in-Possession*