**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SALADWORKS, LLC,[1] | Case No. 15-10327 (LSS) |
| Debtor. | Hearing Date: TBD<br>Objection Deadline: TBD |

**DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN**
**ORDER EXTENDING THE STALKING HORSE AND BID DEADLINES**

Saladworks, LLC ("Saladworks"), the above-captioned debtor and debtor-in-possession (the "Debtor") hereby files the *Debtor's Expedited Motion for Entry of an Order Extending the Stalking Horse and Bid Deadlines* (the "Motion"). In further support of this Motion, the Debtor states as follows:

**PRELIMINARY STATEMENT**

The testimony of the Debtor's expert investment banker at the Second Day Hearing has proved to be spot on: there has been tremendous interest in the acquisition of the Debtor.[2] To date, the Debtor has executed approximately sixty-five (65) nondisclosure agreements, responded to extensive diligence requests, and conducted multiple management meetings with potential Stalking Horse Bidders. The result of these efforts is nine (9) non-binding indications of interest ("IOIs"), many (if not all) of which appear sufficiently strong to satisfy all valid claims against the Debtor.[3] That said, each party that submitted an IOI has requested additional time to complete due diligence prior to submitting its proposed Stalking Horse Bid.

---

[1] The last four digits of the Debtor's tax identification number are (7282). The Debtor's corporate office and the mailing address is 161 Washington Street, Suite 300, Conshohocken, PA 19428.

[2] Second Day Hr'g Tr. 69:15-19 (J. Scott Victor: "So we're out to over 300 buyers. ...54 have signed an NDA. That's a lot of interest in this company....").

[3] In order to preserve confidentiality and foster a sale process that will maximize value, the Debtor will not publicly disclose the identity of the bidders or the terms of the IOIs. However, the Debtor is prepared to submit the IOIs or its summary thereof to the Court for *in camera* review, should the Court wish to review them.

Although the Debtor would have preferred to be in a position to have selected a Stalking Horse Purchaser and negotiated a Transaction Agreement prior to the Stalking Horse Bid Deadline, based on the number of IOIs, and their strength, the Debtor believes that the estate will be better served by extending the process for a few weeks to provide additional time for the Debtor to negotiate the IOIs, select the Stalking Horse Purchaser and, ultimately, negotiate and execute a definitive Transaction Agreement.

Allowing this brief extension of the deadlines set forth in the Bidding Procedures Order will permit the Debtor to increase the value of the initial indications of interest, convert the IOIs into binding letters of intent, and ensure that the Stalking Horse Bid ultimately selected is the highest or otherwise best initial bid, setting the floor for what the Debtor expects to be a lively auction.  In making this request, the Debtor is balancing its desire for speed and certainty with its mandate to maximize value for all constituents.  Fortunately, the Debtor has no senior secured lender driving onerous or artificial financing and sale milestones.  As a result, the Debtor submits that there will be no material prejudice if the deadlines are briefly extended.  To the contrary, extending the deadlines will best ensure that the Debtor obtains the highest or otherwise best initial offer for its assets, which will benefit all parties in interest.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the

Court may enter a final order consistent with Article III of the United States Constitution.[4]

2.      The statutory bases for the relief sought herein are section 105 of title 11 of the

United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "Bankruptcy Code"),

rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule

2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### General Case Background

3.      On February 17, 2015 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as

amended or modified, the "Bankruptcy Code"), in the United States Bankruptcy Court for the

District of Delaware (the "Court").

4.      The Debtor continues to operate its business and manage its properties as a

debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date of

this Motion, no trustee or examiner has been appointed in the Chapter 11 Case.

5.      On February 26, 2015, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Case (the

"Committee").

### The Bidding Procedures Order

6.      On the Petition Date, the Debtor filed the *Motion of the Debtor and Debtor-In-*

*Possession for Entry of an Order (I) Approving Stalking Horse Procedures and Bidding*

---

[4] Pursuant to Local Rule 9013-1(f), the Debtor hereby confirms its consent to entry of a final order by the Court in
connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final
orders or judgments consistent with Article III of the United States Constitution.

*Procedures in Connection with a Transaction By Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof and (IV) Approving Contract Procedures* [Docket No. 14] (the "Procedures Motion").[5]

7.    On March 11, 2015, the Court entered the *Order (I) Approving Stalking Horse Procedures and Bid Procedures in Connection with a Transaction by Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof and (IV) Approving Contract Procedures* (the "Bidding Procedures Order") [Docket No. 103]. The Bidding Procedures Order approved, among other things, the Stalking Horse Procedures, Bidding Procedures, and Contracts Procedures and established various key dates and deadlines in connection therewith.

8.    Specifically, the Court established the following key deadlines and dates, among others:

| Description of Key Deadline/Event | Key Deadline/Date |
|---|---|
| Stalking Horse Bid Deadline | **April 1, 2015**<br>(43 days from the Petition Date) |
| Selection of Highest or Otherwise Best Stalking Horse Bid | **April 3, 2015**<br>(two (2) business days following the Stalking Horse Bid Deadline) |
| Stalking Horse Hearing | No less than 3 days' notice prior to any such hearing |
| Bid Deadline | **May 15, 2015** |
| Auction | **May 18, 2015** at 10:00 a.m. (Eastern Time) |
| Sale Hearing | **May 19, 2015** at 10:00 a.m. (Eastern Time) |

9.    In order to comply with the Court-approved requirements for the submission of a Stalking Horse Bid, the potential Stalking Horse Bidders are required, among other things, to submit their Stalking Horse Bid prior to the expiration of the Stalking Horse Bid Deadline and

---

[5] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the Procedures Motion.

such bid must be submitted in the form of a Transaction Agreement. *Bidding Procedures Order* ¶4.

10.    The Bidding Procedures Order permits the Debtor to modify the Stalking Horse Procedures, the Bidding Procedures and the deadlines set forth therein, in consultation with the Committee, after or as it deems appropriate to maximize value for the Debtor's estate and creditors. *See id.* at ¶2 (holding that the "Stalking Horse Procedures, Bidding Procedures and Contracts Procedures are approved in all respects."); *see also Procedures Motion* ¶27 and 32 (reserving the Debtor's rights to modify the Stalking Horse Procedures and the Bidding Procedures as necessary, including, without limitation, any deadlines thereunder, if such modification is determined by the Debtor, in consultation with the Committee, to be appropriate to maximize value for the Debtor's estate and creditors).[6] Although the Debtor has the ability to extend the deadlines, the Debtor is seeking this Court's approval in an abundance of caution and to deliver on its promise that the marketing process will be completely transparent.

*Status of the Sale Process*

11.    Since the Petition Date, the Debtor has worked diligently in pursuit of a Transaction, with the assistance of its investment banker, SSG Advisors, LLC ("SSG"). SSG has worked closely with the Debtor's management team to analyze its current financial position and business operations and to prepare diligence materials. The Debtor and SSG also have populated a digital data room for prospective purchasers interested in pursuing a Transaction with the Debtor.

---

[6] The Bidding Procedures, as approved by the Court, further provide "[t]he Debtor, in consultation with its advisors and counsel to the Committee, reserves the right as it may determine in its sole and absolute discretion to: ...(vii) extend the deadlines set forth [in the Bidding Procedures], (ix) adjourn or cancel the Auction and/or the Sale Hearing in open court without further notice and (x) modify these Bidding Procedures as it may determine to be in the best interests of its estate ..." *Bidding Procedures* p. 8-9.

12.     To date, the Debtor has negotiated approximately sixty-five (65) nondisclosure agreements, responded to extensive diligence requests and conducted multiple management presentations.  As a result of these efforts, the Debtor has received nine (9) IOIs.  Each of the IOIs contemplates a bid that will require stalking horse protections; each also requires a few additional weeks to complete due diligence and submit a binding bid or letter of intent.

13.     While the Debtor and SSG expected the Stalking Horse Deadlines (as defined below) to provide sufficient time for potential Stalking Horse Bidders to submit a fully-baked Stalking Horse Bid (including meeting the requirement that the bid be submitted in the form of a Transaction Agreement) and that the Debtor would have sufficient time to negotiate, select the Stalking Horse Purchaser and enter into the highest or otherwise best Transaction Agreement, the Debtor finds itself with a "high-class problem":  it has received 9 strong IOIs and now must negotiate with the potential Stalking Horse Bidders to achieve the highest or otherwise best Stalking Horse Bid.

14.     Additionally, while Mr. Victor testified at the Second Day Hearing that none of the potential purchasers expressed a concern regarding the timing proposed in the Procedures Motion,[7] all of the potential Stalking Horse Bidders have requested additional time to conduct due diligence and to prepare and submit a binding Transaction Agreement.  The Debtor believes that extending the Stalking Horse Deadlines by three (3) weeks and adjusting the other deadlines (including the Bid Deadline) (collectively, the "Stalking Horse and Bid Deadlines"), is necessary given the tremendous interest in serving as the Stalking Horse Purchaser.  Indeed, doing so is appropriate to maximize value for the Debtor's estate and stakeholders.  As testified to by Mr. Victor at the Second Day Hearing, "the goal of these procedures, always, is to maximize the purchase price and the value [of a Transaction]." Second Day Hr'g Tr. 58:15-17.  The Debtor

_____

[7] *See* Second Day Hr'g Tr. 62:10-20.

believes that the extensions and scheduling adjustments requested herein are necessary to meet this goal.

## RELIEF REQUESTED

15.    By this Motion, the Debtor respectfully requests that the Court: (i) extend the Stalking Horse Bid Deadline from April 1, 2015 to April 22, 2015 and (ii) extend the deadline for the Debtor to select the highest or otherwise best Stalking Horse Bid (the "Stalking Horse Selection Deadline" and together with the Stalking Horse Bid Deadline, the "Stalking Horse Deadlines") from April 3, 2015 to April 24, 2015; (iii) extend the Bid Deadline from May 15, 2015 to May 26, 2015; (iv) reschedule the Auction from May 18, 2015 to May 27, 2015; (v) reschedule the Sale Hearing from May 19, 2015 to on or after May 29, 2015, at the Court's convenience; and (vi) modify the Sale Objection Deadline so that it is seven (7) days prior to the rescheduled Sale Hearing.[8]

## BASIS FOR RELIEF

16.    While the Bidding Procedures Order provides that the Debtor may extend the Stalking Horse and Bid Deadlines in its discretion, the Debtor seeks Court approval in an abundance of caution and to ensure the process is entirely transparent. The Debtor's goal in this Chapter 11 Case is to effectuate a Transaction for the highest possible value and utilize the proceeds thereof to pay its valid obligations through a plan and, potentially, return value to shareholders. In the Debtor's business judgment, extending or otherwise adjusting the Stalking Horse and Bid Deadlines as requested will maximize value by enabling the Debtor to sign up the best possible Stalking Horse Purchaser from the nine (9) potential Stalking Horse Bidders that

---

[8] While the Debtor believes it has the authority to extend the Stalking Horse and Bid Deadlines without the entry of an order, to the extent an order is necessary, pursuant to Del. Bankr. LR 9006-2, the filing of this Motion prior to the expiration of the current Stalking Horse and Bid Deadlines shall serve to automatically extend such deadlines without the necessity for the entry of a bridge order, until the Court rules on this Motion. *See* Del. Bankr. LR 9006-2.

submitted IOIs. This, in turn, will establish a floor price at what the Debtor anticipates will be a robust Auction. Maximizing proceeds to be received by the estate is the paramount goal in any proposed sale of estate property; in order to do so, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the bidding process. See, e.g., In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bid procedures should allow for "an open and fair public sale designed to maximize value for the estate").

17.    Here, the Debtor submits that extending and adjusting the Stalking Horse and Bid Deadlines will maximize value. As noted above, the Debtor finds itself in the fortunate position of having received nine (9) strong IOIs. All of the potential Stalking Horse Bidders have requested additional time to conduct due diligence and to prepare and submit binding letters of intent. In light of the sheer number of IOIs received to date, the Debtor requires additional time to negotiate the IOIs, select the Stalking Horse Purchaser and, ultimately, negotiate and execute a definitive Transaction Agreement in order to maximize value for the Debtor's estate and creditors.

18.    The Debtor does not believe any party will be prejudiced by an extension of the Stalking Horse and Bid Deadlines. The Debtor is laboring under no onerous, artificial deadline fixed by a senior secured lender as a condition to financing. Indeed, the Debtor, its estate, and parties in interest will benefit from the proposed extensions and adjustments, which will provide additional time for (i) potential Stalking Horse Bidders to submit a binding letter of intent, (ii) the Debtor to analyze and compare the bids and negotiate them to ensure the Debtor receives the

highest or otherwise best offer from the Stalking Horse Purchaser and (iii) the Debtor and the Stalking Horse Purchaser to negotiate the most favorable terms of a Transaction Agreement.

19.     Accordingly, the Debtor respectfully requests that the Court extend and adjust the Stalking Horse and Bid Deadlines as requested herein.

## NOTICE AND NO PRIOR REQUEST

20.     Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the U.S. Trustee; (b) VH; (c) the Committee and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtor submits that no further notice is necessary.

21.     No prior motion for the relief requested herein has been made to this or any other court.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the proposed order, substantially in the form attached hereto (i) extending the Stalking Horse and Bid Deadlines and (ii) granting such other and further relief as the Court deems appropriate.

Dated: April 1, 2015
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_(signature)_

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com
      brown@lrclaw.com

_Counsel to the Debtor and_
_Debtor-in-Possession_