IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SALADWORKS, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10327 (LSS)<br><br>Hearing Date: April 30, 2015 at 4:00 p.m. (ET)<br>Objection Deadline: Prior to or at the Hearing |

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING SELECTION OF STALKING HORSE, BID PROTECTIONS AND THE FORM OF ASSET PURCHASE AGREEMENT

Saladworks, LLC ("Saladworks"), the above-captioned debtor and debtor-in-possession (the "Debtor") hereby files the *Debtor's Motion for Entry of an Order Approving Selection of Stalking Horse, Bid Protections and the Form of Asset Purchase Agreement* (the "Motion"). In further support of this Motion, the Debtor states as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2. The statutory bases for the relief sought herein are sections 105, 363 and 503 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended or modified, the "Bankruptcy Code").

---

[1] The last four digits of the Debtor's tax identification number are (7282). The Debtor's corporate office and the mailing address is 161 Washington Street, Suite 300, Conshohocken, PA 19428.

[2] Pursuant to Local Rule 9013-1(f), the Debtor hereby confirms its consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

{1045.002-W0035902.}

## BACKGROUND

3. On February 17, 2015 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Court.

4. The Debtor continues to operate its business and manage its properties as a debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date of this Motion, no trustee or examiner has been appointed in the Chapter 11 Case.

5. On February 26, 2015, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Case (the "Committee").

6. On the Petition Date, the Debtor filed the *Motion of the Debtor and Debtor-In-Possession for Entry of an Order (I) Approving Stalking Horse Procedures and Bidding Procedures in Connection with a Transaction By Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof and (IV) Approving Contract Procedures* [Docket No. 14] (the "Bidding Procedures Motion"), which is incorporated herein by reference.[3]

7. On March 11, 2015, the Court entered the *Order (I) Approving Stalking Horse Procedures and Bid Procedures in Connection with a Transaction by Public Auction; (II) Scheduling a Hearing to Consider the Transaction; (III) Approving the Form and Manner of Notice Thereof and (IV) Approving Contract Procedures* [Docket No. 103] (the "Bidding Procedures Order"). The Bidding Procedures Order approved, among other things, the Stalking Horse Procedures, which set forth the procedures for the Debtor to solicit and select a Stalking

---

[3] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

Horse Purchaser. The Stalking Horse Procedures also preserved the Debtor's ability to offer the Stalking Horse Purchaser a Break-Up Fee not to exceed 3% of the total guaranteed cash price and to seek expedited approval of any such bid protections on three (3) days' notice to certain parties-in-interest. *Bidding Procedures Order* ¶6.

8. The Bidding Procedures Order further provides that if a Break-Up Fee is approved, any such bid protections "shall be an administrative expense claim against the Debtor's estate pursuant to Bankruptcy Code section 503(b)." *Id.*

9. On April 1, 2015, the Debtor filed the *Debtor's Expedited Motion for Entry of an Order Extending the Stalking Horse and Bid Deadlines* [Docket No. 144] (the "Motion to Extend") seeking an extension of the sale process to gain additional time to negotiate indications of interests (the "IOIs"), select the Stalking Horse Purchaser, and negotiate and execute a definitive Transaction Agreement. On April 9, 2015, the Court granted the Motion to Extend [Docket No. 154] establishing, among other things, April 22, 2015 as the Stalking Horse Bid Deadline and April 24, 2015 as the Stalking Horse Selection Deadline (both as defined in the Motion to Extend).

10. With the assistance of the Debtor's investment banker, SSG Advisors, LLC, the Debtor has run, and continues to run, an extremely thorough marketing process. To date, the Debtor and its professionals have contacted three hundred and thirteen (313) parties regarding a potential Transaction. Seventy (70) of these parties executed non-disclosure agreements. Prior to the expiration of the Stalking Horse Bid Deadline, the Debtor received ten (10) IOIs. The Debtor and its professionals carefully evaluated the IOIs and compared their strengths and weaknesses, with the ultimate goal of selecting a Stalking Horse Purchaser. Notably, each of the IOIs contemplated a bid that required bid protections. After multiple rounds of negotiations with

several of the parties that submitted IOIs and following extensive arms-length negotiations, the Debtor entered into that certain Asset Purchase Agreement dated April 22, 2015 (the "APA") by and between the Debtor and SW Acquisition Company, LLC ("SWAC"), selecting SWAC as the Stalking Horse Purcahser. The APA provides for the purchase of substantially all of the Debtor's assets, with the exception of the assets related to the Paoli Franchise (as defined in the APA) for $15 million, plus up to $200,000 in Required Cure Costs[4] for contracts that are assumed (together as the "Cash Consideration"), plus the assumption of certain liabilities up to the maximum aggregate amount of $500,000, plus the funding of $1.2 million into the Brand Development Fund (as defined in the APA).[5] APA §§ 2.3, 2.6. A copy of the APA is attached hereto as **Exhibit A**.

11.  SWAC was unwilling to execute the APA absent the inclusion of certain bid protections, subject to Court approval. To that end, the APA provides certain bid protections that have been customarily approved in this jurisdiction. Namely, if the APA is terminated for any reason other than because SWAC materially breaches the APA and fails to cure such breach within the requisite time frame, then the Escrow Agent will return the Deposit (as defined in the APA) to SWAC and the Debtor will reimburse SWAC for its actual and reasonable fees, costs and expenses (including, without limitation, reasonable professionals' fees) in connection with the Transaction up to a maximum amount of $250,000 (the "Expense Reimbursement"). *Id.* at § 9.2(b). Additionally, if the APA is terminated by SWAC because the Debtor materially breaches the APA and fails to cure such breach within the specified timeframe and a Transaction closes

---

[4] The term "Required Cure Costs" is defined in the APA as "the cure amounts necessary to be paid to permit the assumption and assignment of Assumed Contracts, pursuant to Sections 363 and 365 of the Bankruptcy Code." *APA* §1.1.

[5] For the avoidance of doubt, this Motion seeks only the approval of the Bid Protections (defined below). Approval of the Sale and the corresponding APA will be sought by separate motion, which the Debtor intends to file so it can be heard at the May 28th Omnibus Hearing.

within six (6) months of such termination, SWAC is entitled to a break-up fee of 3% of the Cash Consideration ($456,000.00) (the "Break-Up Fee") out of sale proceeds from such Transaction. *Id.* at § 9.2(c). Finally, if the APA is terminated because the Debtor consummates an Alternative Transaction,[6] SWAC shall be entitled to the Break-Up Fee and the Expense Reimbursement (together as the "Bid Protections"), which shall be paid out of sale proceeds from such Alternative Transaction; provided, however, that in the event that SWAC is the Back-up Bidder, the termination shall not be effective until 10 days after the consummation of such Alternative Transaction. *Id.* at § 9.2(d).

12. The Debtor, in its business judgment and after consultation with its counsel, investment banker and financial advisor, has determined that the APA and the associated Bid Protections provide the best opportunity for it to maximize the value of a Transaction for the benefit of its estate, creditors and stakeholders.

### RELIEF REQUESTED

13. Pursuant to this Motion, the Debtor seeks entry of an order approving the selection of the Stalking Horse Purchaser, the Bid Protections and the form of the APA. The Debtor requests the foregoing relief on three (3) days' notice as permitted pursuant to the Bidding Procedures Order.

---

[6] The term "Alternative Transaction" is defined in the APA as "a transaction or series of related transactions pursuant to which the [Debtor] accepts a Qualified Bid, other than that of [SWAC], as the highest or best offer pursuant to the Bidding Procedures Order and such Qualified Bid is approved by Final Order of the Bankruptcy Court, provided, however, that an Alternative Transaction shall not include a liquidation of the [Debtor's] assets." *APA* §1.1.

## BASIS FOR RELIEF

A. **The Relief Requested is a Sound Exercise of the Debtor's Business Judgment and Should be Approved under Bankruptcy Code Sections 105(a) and 363(b).**

14. The Debtor's highest priority in this Chapter 11 Case is to maximize the value of a Transaction in order to pay the valid claims of creditors and stakeholders pursuant to a plan. The Debtor believes in its business judgment that it is in the best interests of all parties-in-interest to approve SWAC as the Stalking Horse Purchaser, to provide SWAC with the Bid Protections and to obtain approval of the form of the APA so that all bidders will be required to work from the same baseline transaction document.[7]

15. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business, whether to a stalking horse purchaser or otherwise, be based upon the sound business judgment of the debtor. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

16. "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'"

---

[7] By approving the APA, the Debtor does not intend to preclude the possibility of a restructuring transaction. The Debtor will continue to consider all forms of potential transactions in the exercise of its fiduciary duties.

*Continuing Creditors' Comm. Of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *see also Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp 2d 538, 555 n. 111 (D. Del. 2008). Thus, the Court should grant the relief requested in this Motion if the Debtor demonstrates a sound business justification therefor. *See In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

17. Additionally, Bankruptcy Code section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that a bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

18. The Debtor submits that sound business justifications exist to approve the selection of the Stalking Horse Purchaser, the Bid Protections and the form of the APA. As stated herein, the Debtor seeks to maximize the value of a Transaction for the benefit of all parties-in-interest. SWAC submitted the highest or otherwise best bid to act as the Debtor's Stalking Horse Purchaser. The Debtor and SWAC negotiated the APA, and the Bid Protections contained therein, at arms-length and in good faith. The Debtor believes that approval of SWAC to act as the Stalking Horse Purchaser, and the form of APA entered therewith, will facilitate a competitive bidding process and allow the Debtor to maximize the value of a Transaction.

19. The Bid Protections were a material inducement to SWAC entering into the APA. Indeed, SWAC, as well as all of the other parties who submitted an IOI, stated unequivocally they would act as the Stalking Horse Purchaser only if the Debtor agreed to seek approval of the bid protections. In exchange for the Bid Protections set forth in the APA, SWAC has established a "floor" price or minimum for other bidders interested in pursuing a Transaction with the Debtor, thereby ensuring that during the Auction, if any, the Debtor will receive the highest or otherwise best bid possible for a Transaction.

20. Thus, the Debtor has demonstrated sound business justifications for selecting SWAC as the Stalking Horse Purchaser, providing the Bid Protections and approving the form of the APA in connection therewith.

**B.    The Bid Protections are Necessary to Preserve the Value of the Debtor's Estate**

21. The Bid Protections should be approved as an actual and necessary expense of the Debtor's estate to compensate SWAC for serving as the Stalking Horse Purchaser whose bid will be subject to higher or otherwise better offers. Approval of the Bid Protections is governed by standards for determining the appropriateness of bidding incentives in the bankruptcy context

established by the Third Circuit in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999). In *O'Brien*, the Third Circuit concluded that "the determination whether break-up fees or expenses are allowable under section 503(b) must be made in reference to general administrative expense jurisprudence. In other words, the allowability of [these fees] . . . depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535. The Third Circuit identified at least two instances in which bid protections may benefit the estate. First, bid protections may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id.* at 537. Second, "if the availability of . . . [reimbursement of] expenses were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.*

22.  The Debtor believes the Bid Protections are necessary to lock-in a Transaction with a contractually-committed bidder at a price the Debtor believes to be fair while, at the same time, providing the Debtor with the potential for greater return to the estate through a competitive process. SWAC has spent, and likely will continue to spend, considerable time, money and effort pursuing a Transaction with the Debtor. SWAC's efforts and commitment to the Transaction contemplated by the APA has provided an enormous benefit to the estate by increasing the likelihood that the price at which the Debtor achieves through a Transaction will reflect its true value and will spark more competitive bidding.

23.  The amount of the Break-Up Fee represents 3% of the cash portion of the sale price. Even when combined with the $250,000 Expense Reimbursement, the bid protections are relatively modest compared to the total purchase price under the APA. Bid protections similar to those sought to be approved in this Motion have been approved in other chapter 11 cases in this jurisdiction. *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. April 9, 2012) (Court approved break-up fee of 3% of the bid amount contained in any stalking horse agreement ultimately entered into by the debtors and a $25,000 expense reimbursement); *In re Nortel Networks Inc.*, Case No. 09-10138 (KG) (Bankr. D. Del. Feb. 27, 2009) (approving $650,000 break-up fee and up to $450,000 expense reimbursement, which totals 6.2% of the $17.65 million sale price); and *In re Tallgenicom, L.P.*, Case No. 09-10266 (CSS) Bankr. D. Del. Feb. 19, 2009) (approving $750,000 break-up fee and $750,000 expense reimbursement, which totals 4.1% of the $36.625 million sale price).

24.  The Debtor also believes that the total amount of the Bid Protections will not cause any chilling effect on other prospective bidders and will have no adverse effect on any creditors. The Debtor does not intend to terminate the APA, unless to consummate an Alternative Transaction, which must exceed the consideration offered by SWAC by an amount sufficient to pay the Bid Protections. Moreover, the amount of the Cash Consideration is sufficient to satisfy all valid claims listed on the Debtor's schedules with amounts remaining thereafter to return value to the Debtor's equity holders.

25.  Accordingly, the Debtor requests that this Court approve the selection of SWAC as the Stalking Horse Purchaser and authorize payment of the Bid Protections pursuant to the terms of the APA.

## NOTICE AND NO PRIOR REQUEST

26. Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the U.S. Trustee; (b) VH; (c) the Committee and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtor submits that no further notice is necessary.

27. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the proposed order, substantially in the form attached hereto (i) approving the selection of the Stalking Horse Purchaser, (ii) approving the Bid Protections, (iii) approving the form APA and (iv) granting such other and further relief as the Court deems appropriate.

Dated: April 23, 2015
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/ Adam G. Landis_
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       mumford@lrclaw.com
       brown@lrclaw.com

*Counsel to the Debtor and Debtor-in-Possession*