**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SW LIQUIDATION, LLC,[1] | Case No. 15-10327 (LSS) |
| Debtor. | |

**PLAN OF LIQUIDATION OF SW LIQUIDATION, LLC**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

LANDIS RATH & COBB LLP
Adam G. Landis (No.3407 )
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
           mumford@lrclaw.com
           brown@lrclaw.com

*Counsel to the Debtor and Debtor-in-*
*Possession*

Dated:  July 1, 2015

---

[1] The last four digits of the Debtor's tax identification number are (7282).  The Debtor's mailing address is P.O. Box 440, Gladwyne, PA 19035.

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| ARTICLE I | DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW | | 1 |
| | A. | Defined Terms. | 1 |
| | B. | Rules of Interpretation. | 11 |
| | C. | Computation of Time. | 12 |
| | D. | Governing Law. | 12 |
| | E. | Reference to Monetary Figures. | 12 |
| ARTICLE II | ADMINISTRATIVE CLAIMS, AND PRIORITY TAX CLAIMS | | 13 |
| | A. | Administrative Claims. | 13 |
| | B. | Priority Tax Claims. | 14 |
| | C. | Statutory Fees. | 14 |
| ARTICLE III | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | 14 |
| | A. | Classification of Claims and Interests. | 14 |
| | B. | Summary of Classification. | 15 |
| | C. | Treatment of Claims and Interests. | 15 |
| | D. | Special Provision Governing Claims that are Not Impaired. | 18 |
| | E. | Acceptance or Rejection of the Plan. | 18 |
| | F. | Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b). | 19 |
| | G. | Subordinated Claims. | 19 |
| ARTICLE IV | MEANS FOR IMPLEMENTATION OF THE PLAN | | 19 |
| | A. | Liquidating Trust. | 19 |
| | B. | Cancellation of Existing Securities. | 23 |
| | C. | Preservation of Causes of Action. | 24 |
| | D. | Vesting of Assets. | 24 |
| ARTICLE V | | | 24 |
| | A. | No Disbursing Agent. | 24 |
| | B. | Reserves – Payment of Disputed Claims. | 24 |
| | C. | Cash Payments. | 25 |
| | D. | Distribution for Allowed Claims and Allowed Interests. | 25 |
| | E. | Interest and Charges. | 25 |
| | F. | Compliance with Tax Requirements. | 25 |

G.   Allocations. .................................................................................... 26
H.   Fractional Dollars: De Minimis Distributions. .................................... 26
I.   Delivery of Distributions to Holders of Allowed Claims and Interests. ............... 26
J.   No Penalty Claims. ........................................................................ 26
K.   Setoffs and Recoupment. ................................................................ 26
L.   Distributions by Liquidating Trust. ................................................... 27
M.   Claims Paid or Payable by Third Parties. ........................................... 27

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
   LEASES ........................................................................................... 28

A.   Assumption and Rejection of Executory Contracts and Unexpired Leases. ........ 28
B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases. ........... 28
C.   Insurance Policies. ......................................................................... 28
D.   Indemnification Obligations. ............................................................ 29

ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED
   AND DISPUTED CLAIMS AND INTERESTS ........................................... 29

A.   Allowance of Claims and Interests. .................................................... 29
B.   Claims Administration Responsibilities. .............................................. 29
C.   Estimation of Claims. ...................................................................... 29
D.   Adjustment to Claims or Interests Without Objection. ........................... 30
E.   Time to File Objections to Claims. .................................................... 30
F.   Disallowance of Claims. .................................................................. 30
G.   Disallowance of Class C Claims. ....................................................... 30
H.   Amendments to Claims. ................................................................... 30
I.   Alternative Claim Resolution Procedures. ........................................... 30
J.   Tax Implications for Recipients of Distributions. ................................. 30
K.   No Levy. ...................................................................................... 31
L.   Offer of Judgment. ......................................................................... 31
M.   Release of Liens Securing Disputed Claims. ........................................ 31
N.   No Distributions Pending Allowance. .................................................. 31
O.   Distributions After Allowance. .......................................................... 31

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION AND RELATED
   PROVISIONS ..................................................................................... 32

A.   Compromise and Settlement of Claims, Interests and Controversies. ............... 32
B.   Scardapane Entities Settlement. ........................................................ 32
C.   General Unsecured Claim Settlement. ................................................. 34
D.   Binding Effect. .............................................................................. 34
E.   Release of Liens. ........................................................................... 34
F.   Liabilities to, and Rights of Governmental Units. ................................. 34
G.   Exculpation. ................................................................................. 34
H.   Releases. ...................................................................................... 35
I.   Injunction. .................................................................................... 36

J.      Term of Injunctions or Stays. ................................................................... 36

ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ........................................................................ 36

A.      Conditions Precedent to Confirmation. ................................................. 36
B.      Conditions Precedent to the Effective Date. ......................................... 36
C.      Waiver of Conditions. ............................................................................ 37
D.      Effect of Failure of Conditions. ............................................................ 37

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ......... 37

A.      Modification and Amendments. ............................................................. 37
B.      Effect of Confirmation on Modifications. ............................................. 37
C.      Revocation or Withdrawal of Plan. ....................................................... 38

ARTICLE XI RETENTION OF JURISDICTION ..................................................... 38

ARTICLE XII MISCELLANEOUS PROVISIONS ................................................... 40

A.      Immediate Binding Effect. ..................................................................... 40
B.      Additional Documents. ........................................................................... 40
C.      Statutory Committee and Cessation of Fee and Expense Payment. ..... 40
D.      Reservation of Rights. ............................................................................ 41
E.      Successors and Assigns. ......................................................................... 41
F.      Notices. ................................................................................................... 41
G.      Entire Agreement. .................................................................................. 41
H.      Exhibits. ................................................................................................. 42
I.      Severability of Plan Provisions. ............................................................ 42
J.      Votes Solicited in Good Faith. .............................................................. 42
K.      Closing of Chapter 11 Case. .................................................................. 42
L.      No Admission Against Interest. ............................................................. 43
M.      No Waiver. ............................................................................................. 43
N.      Headings. ................................................................................................ 43
O.      Governing Law. ...................................................................................... 43
P.      Conflicts. ................................................................................................ 44

## INTRODUCTION

SW Liquidation, LLC (f/k/a Saladworks, LLC), as debtor and debtor-in-possession (the, *"Debtor"*) proposes this plan of liquidation (the *"Plan"*)[2] for the resolution of the Claims against and Interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, businesses, assets, results of operations, historical financial information and projections of future operations, as well as a summary and description of this Plan.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    *"2015 Tax Claim"* shall have the meaning ascribed to it in Article VIII.B of the Plan.

2.    *"2015 Tax Claim Reserve"* shall mean the reserve established and maintained pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement to pay the estimated amount of the 2015 Tax Claim, which is not an Allowed Claim on the Effective Date.

3.    *"Administrative Claim"* means any Claim against any Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

4.    *"Administrative Claims Bar Dates"* means either (a) May 29, 2015 at 4:00 p.m. (E.T) for all Administrative Claims arising, accruing or otherwise due and payable any time during the period from the Petition Date through and including April 30, 2015, or (b) thirty (30) days from the Effective Date for all Administrative Claims arising, accruing or otherwise due and payable any time during the period from May 1, 2015 through the Effective Date.

5.    *"Administrative Claim Reserve"* means the reserve established and maintained pursuant to the Plan, Confirmation Order and Liquidating Trust Agreement to pay Administrative Claims, Professional Fee Claims, Priority Non-Tax Claims, and Secured Claims, which are not Allowed Claims on the Effective Date.

6.    *"Affiliate"* has the meaning set forth in Bankruptcy Code section 101(2).

---

[2] Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

7.    *"Allowed"* means with respect to (I) any Claim against the Debtor or its Estate (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtor's Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Case, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or action to reclassify, subordinate or otherwise limit recovery with respect thereto, shall have been interposed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by a Final Order of the Bankruptcy Court; and (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been interposed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order and (II) means with respect to any Interest against the Debtor or portion thereof: (a) an Interest that is not a Disputed Interest or has been allowed by a Final Order; (b) an Interest that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by a Final Order of the Bankruptcy Court and (c) an Interest as to which a Proof of Interest has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or action to reclassify, subordinate or otherwise limit recovery with respect thereto has been interposed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed and for which no Proof of Claim has been Filed is not considered Allowed and shall be deemed expunged upon entry of the Confirmation Order.

8.    *"Allowed Scardapane Entities General Unsecured Claims"* shall have the meaning as ascribed to it in Article VIII.B of the Plan.

9.    *"Assets"* means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate.

10.    *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections Bankruptcy Code sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date, but excludes any Avoidance Action sold to Buyer pursuant to the Sale Order.

11.    *"Bankruptcy Code"* means chapter 11 of title 11 of the United States Code.

12.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Delaware.

13.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

14.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

15.    *"Buyer"* means SW Acquisition Company, LLC.

16.    *"Cash"* means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks and legal tender of the United States of America or equivalents thereof.

17.    *"Causes of Action"* means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, other than those sold to Buyer pursuant to the Sale Order. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the Avoidance Actions; (c) any Claim or defense including fraud, mistake, duress and usury and any other defenses set forth in Bankruptcy Code section 558; and (d) any state law fraudulent transfer claim.

18.    *"Chapter 11 Case"* means the case pending for the Debtor under chapter 11 of the Bankruptcy Code under case number 15-10327 (LSS).

19.    *"Claim"* means any claim, as such term is defined in Bankruptcy Code section 101(5).

20.    *"Claims Bar Date"* means the date or dates established by the Bankruptcy Court in the Claims Bar Date Order by which Proofs of Claim must be Filed.

21.    *"Claims Bar Date Order"* means the Order Granting Motion of the Debtor for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim (Including Claims Arising Under Bankruptcy Code section 503(b)(9)) and Proofs of Interest; (B) Approving the Form and Manner for Filing Proofs of Claim and Proofs of Interest; and (C) Approving Notice Thereof, dated April 22, 2015 [D.I. 177].

22.    *"Claims Objection Deadline"* means the later of (a) 180 days after the Effective Date or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court

for objecting to Claims against the Debtor, except as provided in the General Unsecured Claim Settlement.

23.    *"Claims Register"* means the official register of Claims maintained by the Notice, Claims and Balloting Agent.

24.    *"Class"* means pursuant to Bankruptcy Code section 1122(a), a class of Claims against or Interests in the Debtor as set forth in Article III.

25.    *"Class C Claims"* means any claim asserted by any Entity arising under or relating to Class C Interests, including, but not limited to, Proofs of Claim 37 and 40 filed by JVSW, LLC.

26.    *"Class A Interests"* means Class A Membership Shares, as defined in the Operating Agreement, including, but not limited to, the Proof of Interest Number 60 filed by J. Scar Holdings, LLC.

27.    *"Class C Interests"* means Class C Membership Shares, as defined in the Operating Agreement, including, but not limited to, Proof of Interest Number 39 filed by JVSW, LLC.

28.    *"Collateral"* means any property or interest in property in the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state laws.

29.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

30.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

31.    *"Confirmation Hearing"* means the confirmation hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1129, as such hearing may be continued from time to time.

32.    *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

33.    *"Consummation"* means the occurrence of the Effective Date.

34.    *"Creditors"* has the same meaning as set forth in Bankruptcy Code section 101(10).

35.    *"Creditors' Committee"* means the statutory committee of unsecured creditors appointed on February 26, 2015, by the U.S. Trustee in the Chapter 11 Case pursuant to Bankruptcy Code section 1102, as may be constituted from time to time.

36.    *"Debtor"* means SW Liquidation, LLC (f/k/a Saladworks, LLC), as Debtor and Debtor in possession the Chapter 11 Case.

37.    *"Disclosure Statement"* means the Disclosure Statement for this Plan of Liquidation of Saladworks, LLC Pursuant to Chapter 11 of the Bankruptcy Code, dated July 1, 2015, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

38.    *"Disputed"* means, any Claim against or Interest in the Debtor that is (a) listed in the Schedules as disputed, contingent or unliquidated and for which a Proof of Claim has not been timely Filed; (b) disputed under the Plan; (c) subject, or potentially subject, to a timely objection and/or request for estimation in accordance with Bankruptcy Code section 502(c) and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (d) improperly asserted, by the untimely or otherwise improper filing of a Proof of Claim or Proof of Interest as required by order of the Bankruptcy Court; (e) objected to in whole or in part on or before the Claim Objection Deadline; (f) held by a party that is adverse to the Debtor in any litigation or contested matter pending at the time of the Distribution Date and as to which no Final Order resolving such litigation or contested matter has been entered; or (g) disallowed pursuant to Bankruptcy Code section 502(d). A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount for purposes of distribution until it is no longer a Disputed Claim or Disputed Interest.

39.    *"Disputed Class 3 Reserve"* means the reserve established and maintained pursuant to the terms of this Plan, Confirmation Order and the Liquidating Trust Agreement, which on the Effective Date, shall contain the amount of Cash or other property estimated for distribution on the Distribution Date to holders of Class 3 Claims that are (a) a Disputed Claim or a contingent Claim, pending (i) the allowance or disallowance of such Claims, (ii) the estimation of such Claims for the purposes of distribution or (iii) the realization of the contingencies and (b) unliquidated Claims, if such Claims had been liquidated on the Initial Distribution Date, such amount to be estimated by the Bankruptcy Court for distribution purposes or agreed, in absence of such estimation, by the Liquidating Trustee as sufficient to satisfy such unliquidated Claim upon such Claim's (x) allowance or disallowance, (y) estimation for purposes of distribution, or (z) liquidation, pending the occurrence of such estimation, allowance, or liquidation.

40.    *"Disputed Class 4 Reserve"* means the reserve established and maintained pursuant to the terms of this Plan, Confirmation Order and the Liquidating Trust Agreement, which on the Effective Date, shall contain the amount of Cash or other property estimated for distribution on the Distribution Date to holders of Disputed Class 4 Claims pending (a) the allowance or disallowance of such Claims or (b) the estimation of such Claims for purposes of distribution.

41.    *"Dissolution Date"* means the date upon which the Debtor is dissolved in accordance with this Plan.

42. *"Distribution Date"* means, with respect to (a) a Claim or Interest that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date or (b) a Claim or Interest that is Allowed after the Effective Date, a date as soon as reasonably practicable thereafter.

43. *"Effective Date"* means the date selected by the Debtor that is a Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been met or waived and (b) no stay of the Confirmation Order is in effect.

44. *"Entity"* means an entity as such term is defined in Bankruptcy Code section 101(15).

45. *"Estate"* means the estate created for the Debtor in the Chapter 11 Case pursuant to Bankruptcy Code section 541.

46. *"Exculpated Claim"* means any Cause of Action related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Case; (b) formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, including, but not limited to the General Unsecured Claim Settlement and the Scardapane Settlement; (c) the filing of the Chapter 11 Case; (d) any post-petition act taken or omitted to be taken in connection with the Chapter 11 Case or the restructuring of the Debtor including without limitation the Sale; (e) the pursuit of Confirmation and Consummation; and (f) the administration and implementation of the Chapter 11 Case and the Plan.

47. *"Exculpated Person"* means each of: (a) the Debtor; (b) the members of the Creditors' Committee solely in their respective capacities as such; (c) the Liquidating Trustee; (d) the Professionals retained by the Debtor, the Creditors' Committee and the Liquidating Trustee; and (e) with respect to the entities in clauses (a) through (d), such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, current directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such, but excluding the Hill Entities.

48. *"Executory Contract"* means a contract to which the Debtor is a party and that is subject to assumption or rejection under Bankruptcy Code section 365.

49. *"Federal Judgment Rate"* means the federal judgment rate of interest in effect as of the Petition Date.

50. *"Fee Claim"* means (i) any accrued, contingent and/or unpaid fees and expenses for legal, financial advisory, accounting and other services and reimbursement of expenses that are awarded and allowable under Bankruptcy Code sections 328, 330, 331, 503(b) or 1103 or that are awardable and allowable under Bankruptcy Code section 503 all (a) to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount), (b) after applying any retainer that has been provided to such Professional and (c) to the extent incurred prior to the Effective Date and (ii) any

outstanding expenses of any member of the Committee as of the Effective Date. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses or a Committee member's expenses, then those reduced or denied amounts shall no longer constitute a Fee Claim.

51.     *"File" or "Filed"* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

52.     *"Final Distribution"* means, with respect to the Liquidating Trust, the distribution under this Plan which: (a) which after giving effect to such distribution, results in remaining assets held by such Liquidating Trust, including cash, of a value of less than $500 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

53.     *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

54.     *"General Unsecured Claim"* means any Claim against the Debtor that (i) is neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) is not an Administrative Claim, a Fee Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a WS Finance Claim, a Guaranteed Payment Claim, a Tax Payment Claim or a Class C Claim.

55.     *"General Unsecured Claim Settlement"* means the settlement agreement set forth in Section VIII.C of the Plan.

56.     *"Governmental Claim"* means any Claim against any Debtor Filed by a Governmental Unit, as such term is defined in Bankruptcy Code section 101 (27).

57.     *"Governmental Unit"* means a governmental unit as defined in Bankruptcy Code section 101(27).

58.     *"Guaranteed Payment Claims"* means any Claim relating to a Guaranteed Payment as defined in the Operating Agreement. Pursuant to Bankruptcy Code section 510(b), all Guaranteed Payment Claims shall be subordinated to all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, and WS Finance Claims.

59.     *"Hill Entities"* means, individually and collectively, Vernon W Hill, III; JVSW, LLC; W.S. Finance LLC; and each such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, former or current directors and officers, principals, shareholders, members, partners, employees, relatives, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants,

representatives, management companies, fund advisors and other professionals, each in its respective capacity as such.

60. *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

61. *"Insurance Policies"* means all insurance policies maintained by the Debtor as of the Petition Date, including, without limitation, any general liability policies, and any errors and omissions policies.

62. *"Interests"* means any equity security in a Debtor as defined in Bankruptcy Code section 101(16), including all issued, unissued, authorized or outstanding shares of capital stock of the Debtor together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

63. *"Interim Compensation Order"* means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 125].

64. *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

65. *"Lien"* means a lien as defined in Bankruptcy Code section 101(37).

66. "*Liquidating Trust*" means the trust, of which the Liquidating Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

67. *"Liquidating Trust Agreement"* means the agreement to be included in the Plan Supplement, established as of the Effective Date, setting forth the terms and conditions of the Liquidating Trust, as may be modified from time to time.

68. *"Liquidating Trustee"* means the means the Person or Persons selected by the Debtor to manage and oversee the winding up and dissolution of the Debtor and any successor thereto.

69. *"Notice, Claims and Balloting Agent"* means UpShot Services, LLC.

70. *"Operating Agreement"* means that Amended and Restated Limited Liability Company Agreement of Saladworks, LLC, dated March 9, 2008.

71. *"Ordinary Course Professional Order"* means the Order Authorizing the Debtor to Retain, Employ and Compensate Certain Professionals Utilized in the Ordinary Course of Business [Docket No. 173].

72. *"Person"* means a person as such term as defined in Bankruptcy Code section 101(41).

73.     *"Petition Date"* means February 10, 2015, the date on which the Debtor commenced the Chapter 11 Case.

74.     *"Plan"* means this Plan of Liquidation of SW Liquidation, LLC Pursuant to Chapter 11 of the Bankruptcy Code, (as modified, amended or supplemented from time to time), which is incorporated herein by reference.

75.     *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan whereby the Debtor will disclose the identity and affiliations of the Liquidating Trustee and file the Liquidating Trust Agreement.

76.     *"Priority Non-Tax Claims"* means any Claim against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a).

77.     *"Priority Tax Claim"* means any Claim against the Debtor of the kind specified in Bankruptcy Code section 507(a)(8).

78.     *"Priority Tax Claim Reserve"* means the reserve established and maintained pursuant to the terms of this Plan, Confirmation Order and the Liquidating Trust Agreement, which, on the Effective Date, shall contain the amount of Cash or other property estimated for distribution to holders of Allowed Priority Tax Claims.

79.     *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327, 363 or 1103 and to be compensated for services rendered before or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331 or 363 or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

80.     *"Proof of Claim"* means a written proof of Claim Filed against the Debtor in the Chapter 11 Case.

81.     *"Proof of Interest"* means a written proof Interest Filed against the Debtor in the Chapter 11 Case.

82.     *"Reinstated"* means, with respect to Claims and Interests, the treatment provided for in Bankruptcy Code section 1124.

83.     *"Rejection Claim"* means a Claim against any Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365.

84.     *"Released Parties"* means, except as otherwise expressly set forth in the Plan, the Scardapane Entities.

85.     *"Reserved Funds"* means such amounts reserved pursuant to this Plan, the Confirmation Order, and the Liquidating Trust Agreement for the purpose of providing a Distribution to a Disputed Claim or Interest that becomes Allowed after the Effective Date, including the Administrative Claim Reserve, the Priority Tax Claim Reserve, the Disputed Class

3 Reserve, the Disputed Class 4 Reserve and the 2015 Tax Claim Reserve, in such amounts as agreed to by the Liquidating Trustee.

86.    *"Retained Causes of Action"* means any and all Claims or Causes of Action of the Debtor not sold to Buyer pursuant to the Sale or otherwise waived pursuant to this Plan.

87.    *"Sale"* shall means the sale of substantially all of the Debtor's assets to SW Acquisition Company, LLC pursuant to a written Asset Purchase Agreement dated as of April 22, 2015 (as amended), which Sale was consummated on or about June 12, 2015.

88.    *"Sale Order"* shall mean the Order (a) approving the Sale of substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances and other interests and (b) authorizing the assumption and assignment of certain executory contracts and Unexpired Leases [Docket No. 280].

89.    *"Scardapane Claims"* means the Claims filed by the Scardapane Entities other than the Tax Distribution Claims.

90.    *"Scardapane Entities"* means, individually and collectively, J. Scar Holdings, LLC, John M. Scardapane, Saladworks Development, Inc., Saladworks Holdings NJ LLC, Eatnic, LLC, Joan Scardapane, and Gail Scardapane, and each such Entity's predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, former or current directors and officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, each in its respective capacity as such, provided, however, that in no event shall any of the Scardapane Entities include the Hill Entities.

91.    *"Scardapane Potential Litigation"* means the Claims filed by the Scardapane Entities against the Debtor and the Claims and Causes of Action that the Debtor possesses or may possess against the Scardapane Entities, as further described in the Disclosure Statement.

92.    *"Scardapane Release"* means the release of all claims against the Scardapane Entities as set forth in the Scardapane Settlement.

93.    *"Scardapane Settlement"* means the settlement agreement with the Scardapane Entities as set forth in Section VIII.B of the Plan.

94.    *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to Bankruptcy Code section 521, as such schedules may be amended, modified or supplemented from time to time.

95.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as

determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to the Plan.

96.     *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, together with the rules and regulations promulgated thereunder.

97.     *"Security"* means a security as defined in section 2(a)(l) of the Securities Act.

98.     *"Sublease"* shall have the meaning ascribe to in Article VIII.B of the Plan.

99.     *"Subordinated Claim"* means any Claim against the Debtor that is subordinated to General Unsecured Claims pursuant to an order of the Bankruptcy Court or other court of competent jurisdiction.

100.     *"Tax Distribution Claims"* means any Claim related to a Tax Distribution as defined in the Operating Agreement, including, but not limited to Proof of Claim Number 59 filed by J. Scar Holdings, LLC.  Pursuant to the Scardapane Settlement, all Tax Distribution Claims shall be subordinated to all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, and WS Finance Claims.

101.     *"Unclaimed Property"* means any distribution to Creditors under this Plan that are unclaimed thirty (30) days following the date of such distribution under this Plan.

102.     *"Unclaimed Property Reserve"* means any Unclaimed Property reserved for a period of fifteen (15) days by the Liquidating Trustee on behalf of holders of Unclaimed Property.

103.     *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

104.     *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

105.     *"U.S. Trustee"* means the United States Trustee for the District of Delaware.

106.     *"Voting Deadline"* means 4:00p.m. (prevailing Eastern Time) on September 9, 2015.

107.     *"WS Finance Claims*" means claim number 38 filed by WS Finance, LLC, as may be amended, supplemented or superseded, or any other claim filed related to amounts alleged to be due and owing under Loan Numbers 3657695, 3798488, 3864788, and 9999992004.

B.     *Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter

gender; (2) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule or exhibit, as it may thereafter be amended, modified or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in Bankruptcy Code section 102 shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Liquidating Trust in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

E.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with Bankruptcy Code section 1123(a)(l), Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims.*

1.    Administrative Claims

Except with respect to Administrative Claims that are Fee Claims and except to the extent that a holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment with respect to such holder, each holder of an Allowed Administrative Claim shall be paid in full in Cash.  Such Claims shall be paid on the earlier of (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

2.    Professional Fee Claims

Any Person asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 30 days after the Effective Date; provided, however that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Fee Claim must be Filed and served on the Liquidating Trust and the requesting party no later than 45 days after the Effective Date.  To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.  Upon entry of a Final Order approving any such application for such Fee Claim, the Liquidating Trust shall promptly pay any unpaid portion of such Allowed Fee Claim.

3.    Administrative Claim Bar Dates

Except as otherwise provided in this Article IIA.3, requests for payment of Administrative Claims must be Filed on or before the applicable Administrative Claims Bar Dates.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.

B.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the Debtor, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by Bankruptcy Code section 511; (ii) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to Bankruptcy Code section 1129(a)(9)(C), plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by Bankruptcy Code section 511 or (iii) such other treatment as may be agreed upon by such holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court.

C.    *Statutory Fees.*

On the Distribution Date, the Debtor shall pay, in full in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.  On and after the Effective Date, the Liquidating Trust shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all applicable U.S. Trustee fees for the Chapter 11 Case until the entry of a final decree or until such Chapter 11 Case is closed or dismissed.

# ARTICLE III
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Pursuant to Bankruptcy Code section 1122, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  All Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

B.     *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | WS Finance Claims | Unimpaired | Deemed to Accept |
| 5 | Guaranteed Payment Claims | Unimpaired | Deemed to Accept |
| 6 | Tax Distribution Claims | Unimpaired | Deemed to Accept |
| 7 | Class C Claims | Impaired | Deemed to Reject |
| 8 | Class C Interests | Unimpaired | Deemed to Accept |
| 9 | Class A Interests | Unimpaired | Deemed to Accept |

C.     *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

1.     Class 1 – Priority Non-Tax Claims

(a)     Classification: Class 1 consists of Priority Non-Tax Claims.

(b)     *Treatment:* Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Non-Tax Claim, each holder of such Allowed Priority Non-Tax Claim shall be paid in full in Cash. Allowed Priority Non-Tax Claim shall be paid on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim against the Debtor becomes an Allowed Priority Non-Tax Claim or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Secured Claims

(a)     *Classification:* Class 2 consists of Secured Claims.

(b)     *Treatment:* Except to the extent that a holder of an Allowed Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Secured Claim, each holder of Allowed

Secured Claim shall either (a) be paid in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim; (b) receive all Collateral in possession of the Debtor securing the respective holder's Allowed Secured Claim or (c) such other treatment as the Liquidating Trustee or Debtor and such Creditor agree to in writing.

(c)    *Voting:* Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Secured Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Class 2 Secured Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 – General Unsecured Claims

(a)    *Classification*: Class 3 consists of General Unsecured Claims.

(b)    *Treatment:* Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall be paid in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim. As part of the General Unsecured Claims Settlement, each holder of an Allowed General Unsecured Claim that votes in favor of the Plan shall waive its right to interest on its Allowed General Unsecured Claim and shall affirmatively consent to the Scardapane Release, unless such holder opts out on the Class 3 ballot.

(c)    *Voting:* Class 3 is Impaired by the Plan. Therefore, holders of Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – WS Finance Claims

(a)    *Classification:* Class 4 consists of WS Finance Claims.

(b)    *Treatment:* To the extent Allowed by a Final Order of the Bankruptcy Court, Class 4 Claims will be Reinstated pursuant to Bankruptcy Code section 1142(2) and paid pursuant to the terms of the loan documents evidencing the Allowed WS Finance Claims, if any.

(c)    *Voting*: Class 4 is Unimpaired by the Plan, and each holder of an Allowed WS Finance Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, holders of Allowed WS Finance Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Guaranteed Payment Claims

(a)    *Classification*: Class 5 consists of Guaranteed Payment Claims.

(b)      *Treatment*: To the extent Allowed by a Final Order of the Bankruptcy Court and after payment in full of all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, WS Finance Claims and the establishment of all Reserved Funds, Guaranteed Payment Claims shall be paid *pari passu* with all Allowed Tax Distribution Claims on the later of the Effective Date or the date such Guaranteed Payment Claim becomes an Allowed Claim.

(c)      *Voting*: Class 5 is Unimpaired by the Plan, and each holder of an Allowed Guaranteed Payment Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).   Therefore, holders of Allowed Guaranteed Payment Claims are not entitled to vote to accept or reject the Plan.

6.      Class 6 – Tax Distribution Claims

(a)      *Classification*: Class 6 consists of Tax Distribution Claims.

(b)      *Treatment*: After payment in full of all Allowed Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims and WS Finance Claims, and the establishment of all Reserved Funds, all Allowed Tax Distribution Claims shall be paid *pari passu* with all Allowed Guaranteed Payment Claims on the Effective Date or with respect to the 2015 Tax Claim, within fifteen (15) days of filing of the Debtor's 2015 tax returns.

(c)      *Voting*: Class 6 is Unimpaired by the Plan, and each holder of an Allowed Tax Distribution Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).   Therefore, holders of Allowed Tax Distribution Claims are not entitled to vote to accept or reject the Plan.

7.      Class 7 – Class C Claims

(a)      *Classification*: Class 7 consists of Class C Claims.

(b)      *Treatment*: On the Effective Date, Class 7 Class C Claims shall be deemed Disallowed pursuant to Bankruptcy Code section 510(b) and the treatment of Class C Interests.  Class C Claims shall not be entitled to receive or retain any property or interest on account of such claims.

(c)      *Voting*: Class 7 is Impaired and the holders of Class 7 Claims are deemed to reject the Plan.

8.      Class 8 – Class C Interests

(a)      *Classification*:  Class 8 consists of Class C Interests in the Debtor.

(b)      *Treatment*: Class C Interests shall receive all remaining Cash after establishment of the Reserved Funds, and payment in full of all Class 1 through 6 Claims.

(c)  *Voting*: Class 8 is Unimpaired and holders of Class 8 Interests are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, holders of Class C Interests are not entitled to vote to accept or reject the Plan.

9.  Class 9 – Class A Interests

(a)  *Classification:*  Class 9 consists of Class A Interests in the Debtor.

(b)  *Treatment:*  Class A Interests shall receive all remaining Cash after establishment of the Reserved Funds, and payment in full of all Class 1 through 6 and Class 8 Interests.

(c)  *Voting*: Class 9 is Unimpaired and holders of Class 9 Interests are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, holders of Class A Interests are not entitled to vote to accept or reject the Plan.

D.  *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Claims or Interests that are not Impaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E.  *Acceptance or Rejection of the Plan.*

1.  Voting Classes

Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

2.  Presumed Acceptance of the Plan

Classes 1, 2, 4, 5, 6, 8 and 9 are Unimpaired under the Plan, and the holders in such Classes are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

3.  Presumed Rejection of Plan

Class 7 is Impaired and shall receive no distribution under the Plan.  The holders in Class 7 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

F.    *Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b).*

Bankruptcy Code section 1129(a)(l0) shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  In the event that sufficient votes to confirm this Plan are not received, the Debtor shall seek Confirmation pursuant to Bankruptcy Code section 1129(b)

G.    *Subordinated Claims.*

Except as expressly provided herein with respect to Class C Claims, which have been subordinated pursuant to Bankruptcy Code section 510(b) and disallowed, the allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b) or otherwise.  Pursuant to Bankruptcy Code section 510, the Liquidating Trustee reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Liquidating Trust.*

1.    <u>Creation of Liquidating Trust</u>.  On the Effective Date, the Liquidating Trust shall be created in accordance with the Liquidating Trust Agreement to be included in the Plan Supplement and funded by the Debtor's transfer to the Liquidating Trust of all Assets of the Debtor's Estate.  The Liquidating Trust shall be a newly-formed Delaware trust with no prior assets or liabilities.  The Liquidating Trustee shall serve as the trustee of the Liquidating Trust.

2.    <u>Transfers to the Liquidating Trust</u>.  On the Effective Date, the Debtor and its Estate shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, all Assets of the Estate, which transfer shall be free and clear of Claims and Liens and contractually imposed restrictions.

3.    <u>The Liquidating Trustee</u>.  From and after the Effective Date, a Person appointed by the Debtor shall serve as the Liquidating Trustee pursuant to the Liquidating Trust Agreement, Plan, and Confirmation Order, until death, resignation or discharge and the appointment of a successor Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement.  The Liquidating Trustee shall be the exclusive trustee of the Debtor's estate under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

4.    <u>Responsibilities of the Liquidating Trustee</u>.  The responsibilities of the Liquidating Trustee under the Liquidating Trust Agreement and this Plan shall include those set forth in the Liquidating Trust Agreement, including, without limitation, the following (a) the receipt of the Assets; (b) the establishment and maintenance of such operating, reserve and trust

account(s) as are necessary and appropriate to carry out the terms of the Liquidating Trust; (c) the investment of Cash; (d) the pursuit of objections to, estimation of and settlements of Claims and Interests, regardless of whether such Claim or Interest is listed on the Debtor's Schedule; (e) the prosecution of any cause of action of the Debtor's Estate not otherwise released under the Plan; (f) the calculation and distribution of all distributions to be made under this Plan to holders of Allowed Claims and Interests; (g) the filing of all required tax returns and operating reports and paying of taxes and all other obligations on behalf of the Liquidating Trust, if any; (h) the payment of fees pursuant to 28 U.S.C. § 1930 incurred after the Effective Date until the closing of the Chapter 11 Case; (i) to respond to reasonable requests for information regarding the administration of the Liquidating Trust made by parties in interest; and (j) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, the Confirmation, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

        5.    <u>Powers of Liquidating Trustee</u>.  The powers of the Liquidating Trustee, as set forth in the Liquidating Trust Agreement shall include, without limitation and without further Bankruptcy Court approval, each of the following:

        a.    To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any member, officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including, without limitation, amendment of the Operating Agreement and the dissolution of the Debtor;

        b.    To maintain accounts, to make distributions to holders of Allowed Claims and Interests provided for or contemplated in the Plan; and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trustee;

        c.    To object to any Claims or Interests, to compromise or settle any Claims or Interests prior to objection without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidating Trust Agreement;

        d.    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidating Trust, the Liquidating Trustee on the Estate's behalf and to pay the fees and charges incurred by the Liquidating Trustee on the Liquidating Trust's behalf on or after the Effective Date for fees and expenses of professionals (including those retained by the Liquidating Trustee), disbursements, expenses or related support services relating to the winding down of the Debtor and implementation of the Plan without application to the Bankruptcy Court;

e.    To (i) seek a determination of tax liability under Bankruptcy Code section 505, (ii) pay taxes, if any, related to the Debtor or the sale of non-Cash Assets of the Debtor, (iii) file, if necessary, any and all tax and information returns required with respect to the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise, (iv) make tax elections by and on behalf of the Liquidating Trust, and (v) pay taxes, if any, payable by the Liquidating Trust.

f.    To take all other actions not inconsistent with the provisions of the Plan which the Liquidating Trustee deems reasonably necessary or desirable with respect to administering the Plan;

g.    To invest Cash as deemed appropriate by the Liquidating Trustee, as further set forth in the Liquidating Trust Agreement;

h.    To collect any accounts receivable or other claims of the Debtor or Estate not otherwise disposed of pursuant to the Plan or the Confirmation Order;

i.    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order and the Liquidating Trust Agreement, and perform all of the Debtor's obligations thereunder;

j.    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of tis choice, any assets if the Liquidating Trustee concludes they are no benefit to the Estate;

k.    To prosecute and/or settle Claims or Interests, with or without approval of the Bankruptcy Court, including Causes of Action and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such actions;

l.    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems necessary or advisable;

m.    To collect and liquidate and/or distribute all Assets of the Estate pursuant to the Plan, the Confirmation Order and the Liquidating Trust Agreement and administer the winding down of the Debtor's affairs;

n.    To hold any legal title to any and all of the Assets;

o.    If any of the Assets are situated in any state or other jurisdiction in which the Liquidating Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidating Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Liquidating Trustee hereunder, subject to the conditions and limitations of the Liquidating Trust Agreement, except as modified or limited by the Liquidating Trustee and except where the conditions and

limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is action shall prevail to the extent necessary); require such trustee to be answerable to the Liquidating Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidating Trustee of a written instrument declared such trustee removed from office, and specifying the effective date and time of removal;

        p.   Retain any and all Insurance Policies of the Debtor providing coverage with respect to Claims; and

        q.   Exercise such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

The Liquidating Trustee shall stand in the same position as the Debtor with respect to any claim the Debtor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Liquidating Trustee shall succeed to all of the Debtor's rights to preserve, assert or waive any such privilege.

6.    Unclaimed Property of the Liquidating Trust.  The Liquidating Trustee shall establish the Unclaimed Property Reserve for all Unclaimed Property. Such Unclaimed Property shall be in held in a reserve, for a period of fifteen (15) days, for the recipients of the beneficial interests in the Liquidating Trust entitled thereto under the terms of this Plan and Confirmation Order. Once the distribution to Creditors or Equity Interest holders becomes Unclaimed Property, the Liquidating Trustee shall, subject to the limitations set forth herein, (a) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders which have failed to claim such Unclaimed Property and (b) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of fifteen (15) days, the holders of Allowed Claims or Allowed Interest theretofore entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distribution under this Plan, and such Claims or Interests shall be deemed disallowed and expunged in their entirety and the funds shall be redistributed to the other holders of Allowed Claims and Interests in accordance with the terms of this Plan, Confirmation Order and Liquidating Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

7.    Compensation of the Liquidating Trustee. The Liquidating Trustee shall be compensated as agreed upon by the Liquidating Trustee and the Debtor, pursuant to the terms of the Liquidating Trust Agreement. Any professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidating Trustee. The payment of fees and expenses of the Liquidating Trustee and its professionals shall be made in the ordinary course of business and shall not be subject to Bankruptcy Court approval.

8.    <u>Sale Free and Clear of Liens</u>. The sale or other disposition of any Assets by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement shall be free and clear of any and all liens, claims, interests and encumbrances pursuant to Bankruptcy Code section 363(f).

9.    <u>Transfer Taxes</u>. Any transfer of all or any portion of the Assets pursuant to this Plan shall constitute a "transfer under a plan" within the purview of Bankruptcy Code section 1146(c) and shall not be subject to any stamp tax or similar tax.

10.    <u>Causes of Action</u>. The Liquidating Trustee shall have the sole right to pursue any existing or potential Cause of Action, except those previously waived or released by the Debtor, by informal demand and/or commencement of litigation.

11.    <u>Effective Date</u>. On the Effective Date, the Liquidating Trustee shall have the rights and powers set forth herein in order to carry out and implement the purposes and intent of the Plan.

12.    <u>Records</u>. On or prior to the Effective Date, the Debtor shall transfer to the Liquidating Trust all originals and/or copies of available documents and business records of the Debtor, to the extent they exist and are in the Debtor's possession.   The Liquidating Trust shall maintain such records until the earlier of: (a) the entry of a Final Decree or (b) five years from the filing of the Debtor's final tax returns. Thereafter, said records may be destroyed or otherwise disposed of. If the Liquidating Trustee seeks to destroy or otherwise dispose of any records of the Debtor's Estate prior to the time periods set forth herein, the Liquidating Trustee shall be entitled to do so upon Final Order of the Bankruptcy Court after notice and hearing.

13.    <u>Resignation of Officers and Directors</u>. On the Effective Date, the members of the board of directors and officers of the Debtor shall be deemed to have resigned.

B.    *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtor that are specifically Reinstated pursuant to the Plan) shall be released and discharged; <u>provided</u>, <u>however</u>, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against any Debtor shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided, further, however,* that the preceding provision shall not affect the discharge of Claims against or Interests in any Debtor pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Debtor, except to the extent set forth in or provided for under this Plan.

C.    *Preservation of Causes of Action.*

In accordance with Bankruptcy Code section 1123(b), the Liquidating Trustee may pursue the Causes of Action in its discretion.  The Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor and the Liquidating Trust expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to the Causes of Action upon, after or as a consequence of the Confirmation or Consummation.  In accordance with Bankruptcy Code section 1123(b)(3), the Liquidating Trustee may exclusively enforce any and all Causes of Action.  The Liquidating Trustee shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court.

D.    *Vesting of Assets.*

Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Debtor's Estate shall vest in the Liquidating Trust to the same extent such Assets were held by the Debtor, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and interest holders.  As of the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and settle and compromise Claims and Interests subject only to the restrictions expressly imposed by this Plan, the Liquidating Trust Agreement and the Confirmation Order.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A.    *No Disbursing Agent.*

The Liquidating Trustee shall make all distributions under the Plan on account of Allowed Claims against, and Allowed Interests in, the Debtor. On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee shall make distributions required pursuant to the Plan.  All other distributions or payments under the Plan shall be made by the Liquidating Trustee pursuant to the terms of the Plan, Confirmation Order and Liquidating Trust Agreement.

B.    *Reserves – Payment of Disputed Claims.*

The Reserved Funds shall be segregated and held by the Liquidating Trustee on and after the Effective Date for the payment of Allowed Claims or Disputed Claims. If a Claim for which allowance is pending becomes an Allowed Claim, such Claim shall be paid from the Reserved Funds pursuant to the terms of this Plan within ten (10) days following a Final Order allowing such Claim.

C.    *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidating Trustee shall determine in his sole discretion.

D.    *Distribution for Allowed Claims and Allowed Interests.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to Allowed Claims or Allowed Interests shall be made on the Distribution Date, or as soon after as practicable.

No holder of a Disputed Claim shall have any Claim against the applicable Reserved Funds, the Liquidating Trustee, the Liquidating Trust, the Debtor or the Estate with respect to such Disputed Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan.

E.    *Interest and Charges.*

Other than with respect to the Creditor Settlement and the Scardapane settlement, interest shall accrue and be paid on Allowed Claims. Unless otherwise set forth in any applicable contract, interest shall be the Federal Judgment Rate. All interest earned on the funds held by the Liquidating Trust in any account shall be distributed with the distributions provided in this Plan.

F.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim or Interest complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trust reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

To the extent a holder of an Allowed Claim or Allowed Interest does not timely provide the Liquidating Trust all necessary documentation necessary to determine all tax withholding and reporting requirements for such Allowed Claim or Allowed Interest, the Liquidating Trust shall not be required to make a distribution on such Allowed Claim or Allowed Interest.

G.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.    *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar.  In addition, the Liquidating Trustee shall not be required to may any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidating Trustee shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of a Claim or Interest is entitled to a distribution of $50.00 or more, make such distribution at such time.  The Liquidating Trustee shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims and Interests, in accordance with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

I.    *Delivery of Distributions to Holders of Allowed Claims and Interests.*

Distributions to holders of Allowed Claims and Allowed Interests shall be made at the address set forth in the Schedule unless such addresses are superseded by proofs of clam or interest or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if Liquidating Trustee has been notified in writing of a change of address. If the distribution to any holder of an Allowed Claim or Interest is returned to the Liquidating Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section IV.6 of the Plan.

If there are any residual Unclaimed Distributions at the time of the dissolution of the Liquidating Trust, such residual Unclaimed Distributions shall be available for a subsequent Distribution or donated to a charitable organization at the sole discretion of the Liquidating Trustee.

J.    *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

K.    *Setoffs and Recoupment.*

The Liquidating Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant

pursuant to Bankruptcy Code section 558 or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trust of any such Claim it may have against the holder of such Claim.

Unless otherwise authorized by a Final Order, any holder of a Claim, other than a holder of a Governmental Claim, must assert any setoff rights against a Claim by the Debtor against such Entity by filing an appropriate motion seeking authority to setoff on or before the Confirmation Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor or Liquidating Trust, notwithstanding any statement to the contrary in a Proof of Claim or any other pleading or document Filed with the Bankruptcy Court or delivered to the Debtor.

L.    *Distributions by Liquidating Trust.*

The Liquidating Trustee shall not be obligated to make a distribution that would impair the ability of the Liquidating Trust to pay the expenses incurred by the Liquidating Trust.

M.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties

The Liquidating Trust shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Liquidating Trust. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Liquidating Trust on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Liquidating Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtor's Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

# ARTICLE VI
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, and except for Insurance Policies assumed hereunder, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume Filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to Bankruptcy Code sections 365(a) and 1123.  Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor, the Debtor's Estate, its property or Liquidating Trust without the need for any objection by the Liquidating Trust or further notice to, or action, order or approval of the Bankruptcy Court.  Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 3 of the Plan.

**Rejection Claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtor, its Estate, its property and the Liquidating Trust unless otherwise ordered by the Bankruptcy Court.  Such Rejection Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction.**

C.    *Insurance Policies.*

All of the Debtor's Insurance Policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtor shall be deemed to have assumed all Insurance Policies and any agreements, documents and instruments related thereto and assigned them to the Liquidating Trust.

D.    *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, any and all Indemnification Obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, including the Operating Agreement, or other document or applicable law shall be rejected as of the Effective Date of the Plan, to the extent necessary.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS AND INTERESTS

A.    *Allowance of Claims and Interests.*

After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

B.    *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trust shall have the sole authority: (i) to File, withdraw or litigate to judgment objections to (a) Claims and Interests and (b) to settle or compromise any Claim or Interest, that is a Disputed Claim or Interest without any further notice to or action, order or approval by the Bankruptcy Court and (ii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

C.    *Estimation of Claims.*

Before or after the Effective Date, the Debtor or Liquidating Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c) for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Liquidating Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims or Interests Without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), or any Claim or Interest whose treatment has been deemed modified by this Plan, may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Liquidating Trust, without a Claims objection or any other notice or motion having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims.*

Any objection to Claims against the Debtor shall be Filed on or before the Claims Objection Deadline.

F.    *Disallowance of Claims.*

Except as provided herein or otherwise agreed, any and all Proofs of Claim or Interest Filed after the Claims Bar Date or Administrative Claims Bar Dates, as applicable, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

G.    *Disallowance of Class C Claims.*

Pursuant to Bankruptcy Code section 510(b) and the treatment of Class C Interests, all Class C Claims shall be deemed disallowed in their entirety.

H.    *Amendments to Claims.*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trust, unless the proposed amended Claim is for a lesser amount than the original Claim. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

I.    *Alternative Claim Resolution Procedures.*

The Debtor may file, as part of the Plan Supplement, alternative dispute resolution-based claim resolution procedures applicable to certain contingent, unliquidated or disputed claims (which are disputed on grounds other than the amount of the Claim), which shall become part of the Plan and effective on the Effective Date.

J.    *Tax Implications for Recipients of Distributions.*

Notwithstanding any other provision of the Plan, each Entity receiving a distribution of Cash or other consideration pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any

Governmental Unit on account of the distribution, including income, withholding and other tax obligations.

   K.  *No Levy.*

   Except as otherwise provided herein, distributions under the Plan on account of Allowed Claims or Allowed Interests shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim or Allowed Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.

   L.  *Offer of Judgment.*

   The Liquidating Trust is authorized to serve upon a holder of a Claim or Interest an offer to allow judgment to be taken on account of such Claim, and pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs of Liquidating Trust, after making of such offer, the Liquidating Trust is entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice or action, order or approval of the Bankruptcy Court.

   M.  *Release of Liens Securing Disputed Claims.*

   If a Secured Claim is a Disputed Claim, the holder of such claim shall be deemed to have released any Lien on its collateral, if any, pending determination of its Allowed Secured Claim, upon: (i) payment to the holder of such Disputed Claim the undisputed portion of such Secured Claim and (ii) the placement of the disputed portion thereof into escrow.

   N.  *No Distributions Pending Allowance.*

   If an objection to a Claim or Interest or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim becomes an Allowed Claim or Allowed Interest.

   O.  *Distributions After Allowance.*

   To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trust shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests and Controversies.*

Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim against or Interest in any Debtor may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.    The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders, and is fair, equitable and reasonable.    In accordance with the provisions of the Plan, pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against them any Causes of Action against Entities that are Retained Causes of Action.

B.    *Scardapane Entities Settlement.*

Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of the Scardapane Potential Litigation.  The Scardapane Entities have filed various administrative and unsecured proofs of claims against the Debtor in the aggregate amount of $2,083,944, including estimated liquidated amounts and excluding the Tax Payment Claims, Advancement Claims and Claims in connection with the assignment of non-debtor leases in connection with the Sale.    After extensive negotiations among the Debtor, the Creditors' Committee and the Scardapane Entities, the parties reached an agreement resolving the Scardapane Potential Litigation, approval of which is being sought pursuant to this Plan.  The terms of the Scardapane Settlement are as follows:

- The Scardapane Claims, other than the Tax Payment Claims, shall be subordinated to the holders of all Allowed Class 3 Claims and reduced and Allowed in the amount of $550,000 (the "Allowed Scardapane Entities General Unsecured Claims").

- The Tax Distribution Claims shall be Allowed in the amount of (a) $1,277,349.00 (estimated) for 2013 taxes; (b) $0.00 (estimated) for 2014 taxes; and (c) an amount to be determined by the Debtor's retained tax professional, St. Clair CPAs, P.C. for 2015 taxes (the "2015 Tax Claim").

- The claims of any of the Scardapane Entities for indemnification and advancement under the Operating Agreement ("Advancement Claims"), including amounts incurred by Cole Schotz P.C., shall be an Allowed General Unsecured Claim, provided, however, that prior to an entry of an

order confirming the Plan, the Debtor shall only pay up to $150,000 in Advancement Claims. Upon the Effective Date, and following the establishment of the Reserved Funds and the payment of all holders of Allowed General Unsecured Claims, there shall be no cap on the Advancement Claims and such Allowed Advancement Claims, including any Advancement Claims in excess of the $150,000 incurred prior to or after the entry of an order confirming the Plan, shall be paid to Cole Schotz P.C. on the Effective Date or as soon as practicable thereafter and upon being earned if after the Effective Date.

- The Scardapane Entities will continue their efforts to facilitate the sale of the Debtor's assets, including using their best efforts to obtain landlord consents to the assignment of Saladworks Development, Inc. and Saladworks Holdings NJ, LLC Leases.

- The Debtor and Eatnic, LLC shall agree to enter into a consensual order resolving the proposed rejection of sublease dated July 7, 2014 (the "Sublease") between Eatnic, LLC and the Debtor, that will provide for, *inter alia*, (a) an agreed effective date for rejection or assignment of the Sublease to Eatnic, LLC; (b) an agreed allowed amount of a lease rejection damages claim, which shall be included as part of the Allowed Scardapane Entities General Unsecured Claims; and (c) the as is, where is transfer (without representation or warranties of any kind and for consideration to be negotiated by the Debtor and Eatnic, LLC at arm's length and in good faith and included in the order rejecting the Sublease) of the Debtor's right, title and interest in all of the equipment at the Debtor's location at 231 West Lancaster Avenue, Paoli, PA, together with all rights, claims and defenses of the Debtor under that certain Lease Agreement by and between the Debtor and HSS Leasing, LLC, dated as of October 11, 2011 and any amendments and addenda thereto.

- The Scardapane Entities will vote in favor and take all actions necessary to support the Plan.

- Upon the Effective Date of the Plan, all of the Scardapane Potential Litigation shall be deemed resolved pursuant to the Plan and the parties shall exchange mutual releases as set forth in Article VIII.H of the Plan.

- The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of the Scardapane Entities Settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate and stakeholders, and is fair, equitable and reasonable.

C.    *General Unsecured Claim Settlement.*

Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of the issues related to the allowance and distribution of General Unsecured Claims. In consideration for the waiver of interest, as approved by the holder of such Allowed General Unsecured Claim pursuant to a vote in favor of the Plan, all Allowed General Unsecured Claims shall be paid on the Effective Date and all holders of such Allowed General Unsecured Claims agree to waive interest on payment of such Allowed General Unsecured Claims. In addition, for each holder of an Allowed General Unsecured Claim who votes in favor of the Plan, (a) the Claims Objection Deadline shall be thirty (30) days after the Effective Date and (b) all Causes of Action against holders of General Unsecured Claims, other than the Hill Entities, shall be waived. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this compromise and settlement, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, its Estate and stakeholders, and is fair, equitable and reasonable.

D.    *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Interests, and their respective successors and assigns.

E.    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

F.    *Liabilities to, and Rights of Governmental Units.*

Nothing in the Plan or Confirmation Order shall discharge, release, or preclude: (1) any liability to a Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Confirmation Date; (3) any liability to a Governmental Unit on the part of any Entity other than the Debtor or Liquidating Trust; (4) any valid right of setoff or recoupment by a Governmental Unit; or (5) any criminal liability. Nothing in the Plan or Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence. The Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, after the Confirmation Date, pursuing any police or regulatory action.

G.    *Exculpation.*

None of the Exculpated Persons shall have or incur any liability to any holder of a Claim or Interest for any Exculpated Claim, except for actual fraud, willful misconduct or gross

negligence, and in all respects, the Exculpated Person shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

H.    *Releases.*

1.    *Releases by the Debtor*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and the Liquidating Trustee, and any Person seeking to exercise the rights of the Debtor's Estate, shall be deemed to forever release, waive, and discharge all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever (including the Scardapane Potential Litigation), whether direct or derivative, in connection with or related to the Debtor, the Chapter 11 Case, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date against the Released Parties.

2.    *Releases by Holders of Claims and Interests*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Person (a) that has voted to accept the Plan and has not opted out from granting the releases contained herein; (b) that has voted to reject the Plan but has not opted out from granting the releases contained herein; (c) that is deemed to accept the Plan; or (d) who otherwise agrees to provide the releases set forth herein, shall be deemed to forever release, waive, and discharge all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever (including the Scardapane Potential Litigation), whether direct or derivative, in connection with or related to the Debtor, the Chapter 11 Case, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date against the Released Parties.

3.    *Releases by the Scardapane Entities*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Scardapane Entities shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether direct or derivative, in connection with or related to the Debtor, the Chapter 11 Case, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date against (i) the Debtor; (ii) the Debtor's current and former officers, directors, managers, principals, employees, agents, financial advisors,

attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; (iii) the Liquidating Trust; (iv) the Liquidating Trustee and (v) the Liquidating Trust's agents, financial advisors, attorneys, accountants, consultants, representatives and other professionals, in each case in their capacity as such.

I.    *Injunction.*

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Entities that have held, hold or may hold a Claim or other debt or liability against the Debtor or Interest in the Debtor are (a) permanently enjoined from taking any of the following actions against the Debtor or the Liquidating trust or any of their property on account of such Claims or Interests and (b) preliminary enjoined from taking any of the following actions against the Debtor or the Liquidating Trust, or their property on account of such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with the provision.

J.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Bankruptcy Code section 105 or 362 or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order.

1.    Prior to the Confirmation Hearing, the Debtor shall have on hand Cash sufficient to satisfy the reasonably estimated (i) Allowed Administrative Expense Claims; (ii) Allowed Fee Claims; (iii) Allowed Priority Tax Claims; (iv) Allowed Priority Non-Tax Claims; and (v) Allowed Secured Claims in an aggregate amount determined by the Debtor or set forth in the Confirmation Order.

B.    *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived by the Debtor:

1.    The Confirmation Order shall have been duly entered and be a Final Order and shall be in form and substance otherwise acceptable to the Debtor.

All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

C.    *Waiver of Conditions.*

The conditions to Confirmation and to the Effective Date set forth above may be waived by the Debtor, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan, provided, however, that the Debtor shall not waive the condition in Article IX.B without the consent of the Scardapane Entities.

D.    *Effect of Failure of Conditions.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtor, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any holder of any Claim or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtor expressly reserves its right to revoke or withdraw, to alter, amend or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the, any holder or any other Entity or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, any holder or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtor amending, modifying or supplementing, after the Effective Date, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

4.      ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to Bankruptcy Code section 1141;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to Bankruptcy Code sections 363, 1123 or 1146(a);

9.      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interests for amounts not timely repaid;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement or the Confirmation Order;

15.     enter an order or Final Decree concluding or closing of the Chapter 11 Case;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to Bankruptcy Code section 507;

19.     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including

disputes arising under agreements, documents or instruments executed in connection with the Plan;

> 20.    hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

> 21.    hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under the Plan; and

> 22.    enforce all orders previously entered by the Bankruptcy Court.

> 23.    The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trust and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B.    *Additional Documents.*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   The Debtor or Liquidating Trust, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Creditors' Committee shall dissolve and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtor, the Chapter 11 Case, the Plan, or its implementation, except with respect to applications for Fee Claims.   Except with respect to the unpaid portion of any Allowed Fee Claim, the Liquidating Trust shall not be responsible for paying any fees or expenses incurred by the Creditors' Committee after the Effective Date.

     D.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims and Interests before the Effective Date.

     E.    *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, if any, of such Entity.

     F.    *Notices.*

To be effective, all notices, requests and demands to or upon the Liquidating Trust shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

**Liquidating Trust:**

Adam G. Landis
Kerri K. Mumford
Kimberly Brown
LANDIS RATH & COBB LLP
919 N. Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400

After the Effective Date, the Liquidating Trustee may, in its sole discretion, notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

     G.    *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above, from the Notice, Claims and Balloting Agent's website at http://www.upshotservices.com/saladworks or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.    *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent and (3) non-severable and mutually dependent.

J.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the Debtor and its agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Debtor will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

K.    *Closing of Chapter 11 Case.*

The Liquidating Trustee shall promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Case that has been fully administered.

L.    *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest.  In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtor or any of its former or present officers, directors or Interest holders.

M.    *No Waiver.*

Except as otherwise specifically provide herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtor.

N.    *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any manner affects the terms, provisions or interpretation of the Plan.

O.    *Governing Law.*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving any effect to the principles of conflicts of law or such jurisdiction.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

P.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Confirmation Order shall govern and control.

Dated: July 1, 2015

Respectfully Submitted,

SW LIQUIDATING, LLC

By:

/s/ John M. Scardapane
John M. Scardapane
Chief Executive Officer/Director


By:

/s/ Wayne P. Weitz
Wayne P. Weitz
Director

By:

/s/ Edward Chambers
Edward Chambers
Director